Justice ALITO, concurring.
I concur in the Court's opinion because I agree that Congress, by using the term "substantial evidence," intended to invoke administrative law principles. One such principle, as the Court explains, is the requirement that agencies give reasons. I write separately, however, because three other traditional administrative law principles may also apply.
First, a court must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.,419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). In the context of 47 U.S.C. § 332(c)(7), which leaves in place almost the entirety of a local government's authority, a succinct statement that a permit has been denied because the tower would be esthetically incompatible with the surrounding area should suffice. Nothing in this statute imposes an opinion-writing requirement.
Second, even if a locality has erred, a court must not invalidate the locality's decision if the error was harmless. "In administrative law, as in federal civil and criminal litigation, there is a harmless error rule." National Assn. of Home Builders v. Defenders of Wildlife,551 U.S. 644, 659-660, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007)(internal quotation marks omitted). Here, for instance, I have trouble believing that T-Mobile South, LLC-which actively participated in the decisionmaking process, including going so far as to transcribe the public hearing-was prejudiced by the city of Roswell's delay in providing a copy of the minutes.
Third, the ordinary rule in administrative law is that a court must remand errors to the agency "except in rare circumstances." Florida Power & Light Co. v. Lorion,470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). Nothing we say today should be read to suggest that when a locality has erred, the inevitable remedy is that a tower must be built. The Court has not passed on what remedial powers a "court of competent jurisdiction" may exercise. § 332(c)(7)(B)(v). This unanswered question is important given the federalism implications of this statute.
I do not understand the Court's opinion to disagree with this analysis. On that understanding, I join the Court's opinion.
Chief Justice ROBERTS, with whom Justice GINSBURGjoins, and with whom Justice THOMASjoins as to Part I, dissenting.
The statute at issue in this case provides that "[a]ny decision ... to deny a request ... shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The Court concludes that the City loses this case not because it failed to provide its denial in writing. It did provide its denial in writing. Nor does the City lose because the denial was not supported by substantial evidence in a written record. The City compiled a written record; whether that record contained substantial evidence supporting the denial is not at issue here and has not been decided. Nor does the City lose because its denial was not accompanied *820 by a statement of reasons apart from the written record. A sharp conflict had developed in the lower courts over the necessity of such a separate statement, and the Court today squarely holds that one is not required. Ante,at 813 - 814, 815 - 817. No, the City instead loses because of a question of timing: The written record was not made available roughly the same day as the denial-a requirement found nowhere in the text of the statute.
The Court says this timing requirement is necessary for judicial review of whether the denial is supported by substantial evidence. A reviewing court, however, can carry out its function just as easily whether the record is submitted four weeks or four days before the lawsuit is filed-or four days after,for that matter. The Court also supports its timing rule by saying that the company whose application is denied needs the time to carefully consider whether to seek review. But cell service providers are not Mom and Pop operations. As this case illustrates, they participate extensively in the local government proceedings, and do not have to make last-second, uninformed decisions on whether to seek review.
The City here fully complied with its obligations under the statute: It issued its decision in writing, and it submitted a written record containing-so far as we know-substantial evidence supporting that decision. I respectfully dissent from the Court's contrary conclusion.
I
Section 332(c)(7), enacted as part of the Telecommunications Act of 1996, places several limits on local governments' authority to regulate the siting of cell towers and other telecommunications facilities. A locality's regulations must not unreasonably discriminate among service providers, effectively prohibit the provision of service, or rest on concerns about the environmental effects of radio emissions. See §§ 332(c)(7)(B)(i), (iv). In addition, the provision central to this case specifies that "[a]ny decision by a State or local government ... to deny a request to place, construct, or modify" a cell tower "shall be in writing and supported by substantial evidence contained in a written record." § 332(c)(7)(B)(iii). And another provision authorizes expedited judicial review of a locality's alleged failure to comply with these rules. See § 332(c)(7)(B)(v).
After the city council of Roswell voted to deny T-Mobile's application to build a cell tower, the City sent T-Mobile a short letter that announced the denial but provided no further explanation. The question T-Mobile has presented to this Court is whether such a letter satisfies the "decision ... in writing" requirement of Section 332(c)(7)(B)(iii). See Pet. for Cert. i.
I would hold it does. The City's letter was certainly in writing. And it certainly memorialized the denial of T-Mobile's application. So T-Mobile's only hope is that the lack of explanation for the denial means the letter is not truly a "decision." But like the majority, I reject T-Mobile's contention that the term "decision" inherently demands a statement of reasons. Dictionary definitions support that conclusion. See ante,at 817 - 818 (citing Black's Law Dictionary); see also B. Garner, A Dictionary of Modern Legal Usage 251 (2d ed. 1995) (grouping "decision" with "judgment," as distinct from "opinion").
A comparison between Section 332(c)(7)(B)(iii)and other statutory provisions that were on the books in 1996 also suggests that when Congress wants decisionmakers to supply explanations, it says so. Consider first the Administrative Procedure Act. In the context of formal adjudication and rulemaking, it demands that "decisions ... include a statement of ...
*821 findings and conclusions, and the reasons or basis therefor,on all the material issues." 5 U.S.C. § 557(c)(A) (1994 ed.)(emphasis added). Even in informal proceedings, an agency must give prompt notice of the denial of a written application, and, "[e]xcept in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial." § 555(e) (emphasis added).
The Communications Act of 1934, which the Telecommunications Act overhauled, itself contains a similar express requirement. Section 309 allows an interested party to petition the Federal Communications Commission to deny a license application. 47 U.S.C. § 309(d)(1) (1994 ed.). If the FCC decides to grant an application despite such a petition, it must "issue a concise statement of the reasons for denying the petition." § 309(d)(2). And a provision added along with Section 332(c)(7) in the Telecommunications Act provides that when the FCC grants or denies a petition for regulatory forbearance, it "shall explainits decision in writing." § 160(c) (2000 ed.) (emphasis added). Many other statutes in effect in 1996 could be added to the list. See, e.g., 19 U.S.C. § 1515(a) (1994 ed.)(notice of customs protest denial "shall include a statement of the reasons for the denial"); 30 U.S.C. § 944 (1994 ed.)(individual whose claim for black lungbenefits "is denied shall receive ... a written statement of the reasons for denial"); 38 U.S.C. § 5104(b) (1994 ed.)(notice of denial of veterans benefits must include "a statement of the reasons for the decision").
Given the commonplace nature of express requirements that reasons be given-and the inclusion of such provisions in the Administrative Procedure Act, the original Communications Act, and another provision of the Telecommunications Act-the absence of one in Section 332(c)(7)(B)(iii)is telling, and supports reading "decision ... in writing" to demand nothing more than what it says: a written document that communicates the town's denial.
In my view, resolving that interpretive question in the City's favor also resolves the case as it stands in this Court. Although Section 332(c)(7)(B)(iii)goes on to require that a denial be "supported by substantial evidence contained in a written record," the adequacy of the City's written record is not properly before us. As the Eleventh Circuit noted in its opinion below, the "sole issue" before it was the "in writing" requirement; it did not examine whether the City's denial was supported by substantial evidence. 731 F.3d 1213, 1221, n. 7 (2013). The Court today also-correctly-does not decide whether substantial evidence supported the City's denial. The Eleventh Circuit's judgment therefore ought to be affirmed and the case remanded to the District Court for further proceedings on T-Mobile's remaining challenges.
II
The Court agrees that the City was not required to explain its reasoning in its denial letter, but it nonetheless rules for T-Mobile. The improbable linchpin of this outcome is the City's failure to finalize the minutes of the April 12 city council meeting until May 10. Improbable because, so far as I can tell, T-Mobile never even mentioned this timeline, let alone based an argument on it, in its filings in the lower courts or its petition for certiorari. Nor did the Eleventh Circuit address this timing question in any way. Cf. Zivotofsky v. Clinton,566 U.S. ----, ----, 132 S.Ct. 1421, 1430, 182 L.Ed.2d 423 (2012)("Ordinarily, we do not decide in the first instance issues not decided below." (internal quotation marks omitted)).
*822 The Court nonetheless rules against Roswell on this ground, proceeding in two steps: First it concludes that a town must provide written reasons in someform (the minutes being the only candidate here); then it decides a town must make those reasons available "essentially contemporaneously" with its decision (the final minutes were not). Ante,at 818 - 819. In my view, the first step is justified by the statutory text, but the second is not.
The need to provide reasons in some form follows from the portion of Section 332(c)(7)(B)(iii)requiring that denials be "supported by substantial evidence contained in a written record." Like the majority, I read this phrase as specifying a familiar standard of review to be used if a denial is challenged in court. And like the majority, I agree that substantial evidence review requires that a decisionmaker's reasons be identifiable in the written record. If a reviewing court cannot identify any of a town's reasons for denying an application, it cannot determine whether substantial evidence supports those reasons, and the town loses.
But then the Court goes a step further and creates a timing rule: A town must provide "its written reasons at essentially the same time as it communicates its denial." Ante,at 816. This timing rule is nowhere to be found in the text of Section 332(c)(7)(B)-text that expresslyestablishes other time limits, both general and specific. See § 332(c)(7)(B)(ii)(requiring localities to act on siting requests "within a reasonable period of time"); § 332(c)(7)(B)(v)(giving injured parties 30 days to seek judicial review). Despite its assertion that the statute's "enumerated limitations" constitute "an exclusive list," ante,at 815 - 816, the Court offers two justifications for its inference of this additional, unenumerated limitation.
The first is that "a court cannot review the denial without knowing the locality's reasons," so it would "stymie" judicial review to allow delay between the issuance of the decision and the statement of reasons. Ante,at 816. This makes little sense. The Court's "essentially contemporaneous" requirement presumably means the town must produce its reasons within a matter of days (though the majority never says how many). But a reviewing court does not need to be able to discern the town's reasons within mere days of the decision. At that point no one has even asked the court to review the denial. The fact that a court cannot conduct review without knowing the reasons simply means that if the town has not already made the record available, it must do so by whatever deadline the court sets. The court should proceed "on an expedited basis," § 332(c)(7)(B)(v), but that hardly means it will need the record within days of the town's decision. And in this case there is no indication that the City's submission of the written record was untimely or delayed the District Court's review.
The Court's second justification focuses on the denied applicant, which must choose within 30 days from the denial whether to take the town to court. § 332(c)(7)(B)(v). "[W]ithout knowing the locality's reasons," the majority says, the applicant "may not be able to make a considered decision whether to seek judicial review." Ante,at 816. This concern might have force if towns routinely made these decisions in secret, closed-door proceedings, or if applicants were unsophisticated actors. But the local zoning board or town council is not the Star Chamber, and a telecommunications company is no babe in the legal woods. Almost invariably in cases addressing Section 332(c)(7), the relevant local authority has held an open meeting at which the applicant was present and the issues publicly aired. In this case and *823 others, T-Mobile has brought its own court reporter, ensuring that it has a verbatim transcript of the meeting well before the town is likely to finalize its minutes. See Brief for Petitioner 12, n. 2; T-Mobile South, LLC v. City of Milton, Georgia,728 F.3d 1274, 1277 (C.A.11 2013). I strongly doubt that a sophisticated, well-lawyered company like T-Mobile-with extensive experience with these particular types of proceedings-would have any trouble consulting its interests and deciding whether to seek review before it had received a written explanation from the town. The Court worries about towns "sandbagg [ing]" companies with unexpected reasons, ante,at 816 - 817, n. 3, but if those reasons in fact come out of nowhere, they will not be supported by substantial evidence in the record. And if the company's initial complaint mistakes the town's reasoning, the company will have no difficulty amending its allegations. See Fed. Rule Civ. Proc. 15(a).
In sum, there is nothing impractical about reading the statutory text to require only that the reasons implied by the term "substantial evidence" be discernible to the court when it conducts substantial evidence review. Demanding "essentially contemporaneous" written reasons adds a requirement that Congress has included expressly in many other statutes, but not in this one. See supra,at 820 - 821.
* * *
For the foregoing reasons, the Court's opinion and judgment are wrong. But this is not a "the sky is falling" dissent. At the end of the day, the impact on cities and towns across the Nation should be small, although the new unwritten requirement could be a trap for the unwary hamlet or two. All a local government need do is withhold its final decision until the minutes are typed up, and make the final decision and the record of proceedings (with discernible reasons) available together.
Today's decision is nonetheless a bad break for Roswell. Or maybe not. The Court leaves open the question of remedy, ante,at 818 - 819, and it may be that failure to comply with the "in writing" requirement as construed by the Court can be excused as harmless error in appropriate cases. It is hard to see where the harm is here. T-Mobile somehow managed to make the tough call to seek review of the denial of an application it had spent months and many thousands of dollars to obtain, based on a hearing it had attended. And nothing about Roswell's failure to meet the "contemporaneously" requirement delayed, much less "stymied," judicial review.
The Court today resolves the conflict over whether a town must provide a statement of reasons with its final decision, apart from the written record. We now know it need not. As the Court explains, "nothing in [the] text [of the Act] imposes any requirement that the reasons be given in any particular form," and there is "in the Act no command-either explicit or implicit-that localities must provide those reasons in a specific document." Ante,at 816. Good analysis-which also should have been followed to reject the timing requirement the Court creates today.
I respectfully dissent.