(Slip Opinion) OCTOBER TERM, 2014 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## T-MOBILE SOUTH, LLC *v.* CITY OF ROSWELL, GEORGIA

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 13–975.  Argued November 10, 2014—Decided  January 14, 2015

Respondent Roswell's city council (Council) held a public hearing to consider an application by petitioner T-Mobile South, LLC, to build a cell phone tower on residential property.  During the hearing, several Council members expressed concerns about the tower's impact on the area.  The hearing ended with the Council unanimously passing a motion to deny the application.  Two days later, the City's Planning and Zoning Division informed petitioner by letter that the application had been denied and that minutes from the hearing would be made available.  The detailed minutes were published 26 days later.

Petitioner filed suit, alleging that the Council's denial was not supported by substantial evidence in the record.  The District Court agreed, concluding that the City, by failing to issue a written decision stating its reasons for denying the application, had violated the Telecommunications Act of 1996, which provides that a locality's denial "shall be in writing and supported by substantial evidence contained in a written record," 47 U. S. C. §332(c)(7)(B)(iii).  The Eleventh Circuit, following its precedent, found that the Act's requirements were satisfied here because petitioner had received a denial letter and possessed a transcript of the hearing that it arranged to have recorded.

*Held*:

1. Section 332(c)(7)(B)(iii) requires localities to provide reasons when they deny applications to build cell phone towers. This conclusion follows from the Act's provisions, which both preserve and specifically limit traditional state and local government authority.  It would be considerably difficult for a reviewing court to determine whether a locality's denial was "supported by substantial evidence contained in a written record," §332(c)(7)(B)(iii), or whether a locality

had "unreasonably discriminate[d] among providers of functionally equivalent services," §332(c)(7)(B)(i)(I), or regulated siting "on the basis of the environmental effects of radio frequency emissions," §332(c)(7)(B)(iv), if localities were not obligated to state their reasons for denial. And nothing in the Act suggests that Congress meant to use the phrase "substantial evidence" as anything but an administrative law "term of art" that describes how "an administrative record is to be judged by a reviewing court." *United States* v. *Carlo Bianchi & Co.*, 373 U. S. 709, 715. Pp. 6–8.

2. Localities are not required to provide their reasons for denying siting applications in the denial notice itself, but may state those reasons with sufficient clarity in some other written record issued essentially contemporaneously with the denial. Pp. 8–13.

(a) Nothing in the Act's text imposes a requirement that the reasons be given in any particular form, and the Act's saving clause, §332(c)(7)(A), makes clear that the only limitations imposed on local governments are those enumerated in the statute. Localities comply with their obligation to give written reasons so long as those reasons are stated clearly enough to enable judicial review. Because an adversely affected entity must decide whether to seek judicial review within 30 days from the date of the denial, §332(c)(7)(B)(v), and because a court cannot review the denial without knowing the locality's reasons, the locality must provide or make available its written reasons at essentially the same time as it communicates its denial. Pp. 8–11.

(b) Petitioner's contrary arguments are unavailing. The statute's word "decision" does not connote a written document that itself provides all the reasons for a given judgment. The absence of the word "notify" in the provision at issue also does not signal an intention to require communication of more than a judgment. Nor does an obligation to provide reasons in the writing conveying the denial arise from the "substantial evidence" requirement itself or from the requirement of court review "on an expedited basis," §332(c)(7)(B)(v). It is sufficient that a locality's reasons be provided in a manner that is clear enough and prompt enough to enable judicial review. Pp. 11–13.

3. The City failed to comply with its statutory obligations under the Act. Although it issued its reasons in writing and did so in an acceptable form, it did not provide its written reasons essentially contemporaneously with its written denial when it issued detailed minutes 26 days after the date of the written denial and 4 days before expiration of petitioner's time to seek judicial review. P. 14.

731 F. 3d 1213, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which SCALIA,

Syllabus

KENNEDY, BREYER, ALITO, and KAGAN, JJ., joined. ALITO, J., filed a concurring opinion. ROBERTS, C. J., filed a dissenting opinion in which GINSBURG, J., joined, and in which THOMAS, J., joined as to Part I. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 13–975

## T-MOBILE SOUTH, LLC, PETITIONER *v.* CITY OF ROSWELL, GEORGIA

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 14, 2015]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The Telecommunications Act of 1996 provides, in relevant part, that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 110 Stat. 151, 47 U. S. C. §332(c)(7)(B)(iii). The question presented is whether, and in what form, localities must provide reasons when they deny telecommunication companies' applications to construct cell phone towers. We hold that localities must provide or make available their reasons, but that those reasons need not appear in the written denial letter or notice provided by the locality. Instead, the locality's reasons may appear in some other written record so long as the reasons are sufficiently clear and are provided or made accessible to the applicant essentially contemporaneously with the written denial letter or notice.

I

In February 2010, petitioner T-Mobile South, LLC, applied to build a new, 108-foot-tall cell phone tower on

2.8 acres of vacant residential property in the city of Ros-
well, Georgia (City). Roswell's city ordinances require
that any cell phone tower proposed for a residential zoning
district must take the form of an "alternative tower struc-
ture"—an artificial tree, clock tower, steeple, or light
pole—that, in the opinion of the city council (City Council
or Council), is "compatible with the natural setting and
surrounding structures" and that effectively camouflages
the tower. Code of Ordinances §§21.2.2, 21.2.5(a); see
App. 68, 75. In accordance with these provisions, petition-
er's application proposed a structure in the shape of an
artificial tree or "monopine." *Id.,* at 42.

The City's Planning and Zoning Division reviewed peti-
tioner's application, along with a substantial number of
letters and petitions opposing it, and ultimately issued a
memorandum to the City Council concluding that the
application met all of the requirements set out in the
City's ordinances. It recommended that the City Council
approve the application on three conditions to which peti-
tioner was prepared to agree.

The City Council then held a 2-hour-long public hearing
on April 12, 2010, to consider petitioner's application.
Petitioner arranged privately to have the hearing tran-
scribed, and, as discussed below, the City subsequently
issued detailed minutes summarizing the proceedings. At
the hearing, after the Planning and Zoning Division pre-
sented its recommendation and after petitioner's repre-
sentatives made a presentation in support of the applica-
tion, a number of residents raised concerns. Among these
were concerns that the tower would lack aesthetic compat-
ibility, that the technology was outdated and unnecessary,
and that the tower would be too tall. Petitioner's repre-
sentatives responded by reiterating that it had met all of
the ordinance's requirements and by providing testimony
from a property appraiser that placement of cell phone
towers does not reduce property values.

Members of the City Council then commented on the application. One member of the six-person Council was recused, see *id.,* at 111 (hearing transcript); *id.,* at 322 (meeting minutes), leaving five voting members. Member Igleheart said that other carriers had sufficient coverage in the area and that the City did not need to level the playing field for petitioner. *Id.,* at 173–174 (hearing transcript). He also stated that his "[b]ottom line" was that he did not think it was "appropriate for residentially zoned properties to have the cell towers in their location." *Id.,* at 174 (hearing transcript); *id.,* at 338 (meeting minutes). Member Dippolito found it difficult to believe that the tower would not negatively impact the area and doubted that it would be compatible with the natural setting. *Id.,* at 175–176 (hearing transcript); *id.,* at 339 (meeting minutes). Member Wynn expressed concerns about the lack of a backup generator for emergency services, *id.,* at 172 (hearing transcript), and did not think the tower would be "compatible with this area," *id.,* at 176 (hearing transcript); *id.,* at 339 (meeting minutes). Member Orlans said only that he was impressed with the information put together by both sides. *Id.,* at 173 (hearing transcript); *id.,* at 337 (meeting minutes). Finally, Member Price, the liaison to the Planning and Zoning Division, made a motion to deny the application. She said that the tower would be aesthetically incompatible with the natural setting, that it would be too tall, and that its proximity to other homes would adversely affect the neighbors and the resale value of their properties. *Id.,* at 176–177 (hearing transcript); *id.,* at 339–340 (meeting minutes). The motion was seconded, and then passed unanimously. *Id.,* at 177 (hearing transcript); *id.,* at 340 (meeting minutes).

Two days later, on April 14, 2010, the Planning and Zoning Division sent a letter to petitioner that said in its entirety:

"Please be advised the City of Roswell Mayor and City Council denied the request from T-Mobile for a 108' mono-pine alternative tower structure during their April 12, 2010 hearing. The minutes from the aforementioned hearing may be obtained from the city clerk. Please contact Sue Creel or Betsy Branch at [phone number].

"If you have any additional questions, please contact me at [phone number]." *Id.,* at 278.

The detailed written minutes of the hearing, however, were not approved and published by the City until 26 days later, on May 10, 2010. See *id.,* at 321–341 (meeting minutes).[1]

On May 13, 2010, 3 days after the detailed minutes were published—and now 29 days after the City denied petitioner's application—petitioner filed suit in Federal District Court. It alleged that the denial of the application was not supported by substantial evidence in the record, and would effectively prohibit the provision of wireless service in violation of the Telecommunications Act of 1996 (Act). The parties filed cross-motions for summary judgment.

The District Court granted petitioner's motion for summary judgment, concluding that the City had violated the

———————

[1] Brief minutes had been adopted on April 19, but these only noted that the motion to deny the application had passed with five members in favor and one member recused. See Council Brief 041210, online at http://roswell.legistar.com/LegislationDetail.aspx?ID=657578&GUID=0 8D5297C-0271-41F9-9DAA-E8E3DD6314BD&Options=&Search= (all Internet Materials as visited January 12, 2015, and available in Clerk of Court's case file). According to the meeting calendar for the City Council's May 10, 2010, meeting, it was on that day that the City Council approved detailed minutes of the April 12 meeting that included a recitation of each member's statements during the hearing. See http://roswell.legistar.com/MeetingDetail.aspx?ID=101786&GUID=63 828B21-EB83-4485-B4EA-10EE65CF48CD&Options=info|&Search=.

Act when it failed to issue a written decision that stated the reasons for denying petitioner's application. The District Court interpreted the Act to require that a written denial letter or notice describe the reasons for the denial and that those reasons be sufficiently explained to allow a reviewing court to evaluate them against the written record.

The Eleventh Circuit reversed. 731 F. 3d 1213 (2013). It explained that, in *T-Mobile South, LLC* v. *Milton*, 728 F. 3d 1274 (2013), which was decided after the District Court's decision in this case, it had held that "to the extent that the decision must contain grounds or reasons or explanations, it is sufficient if those are contained in a different written document or documents that the applicant is given or has access to." *Id.,* at 1285. The Eleventh Circuit acknowledged that the Courts of Appeals had split on that question, and that it had departed from the majority rule. Compare *Southwestern Bell Mobile Systems, Inc.* v. *Todd*, 244 F. 3d 51, 60 (CA1 2001) (requiring that a locality issue a written denial that itself contains a "sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons"); *New Par* v. *Saginaw*, 301 F. 3d 390, 395–396 (CA6 2002); *MetroPCS, Inc.* v. *City and County of San Francisco*, 400 F. 3d 715, 723 (CA9 2005), with *AT&T Wireless PCS, Inc.* v. *City Council of Virginia Beach*, 155 F. 3d 423, 429 (CA4 1998) (holding that written minutes of a meeting and the word "denied" stamped on a letter describing the application were sufficient). Applying its rule to this case, the Eleventh Circuit found that the requirements of 47 U. S. C. §332(c)(7)(B)(iii) were satisfied because petitioner had its own transcript as well as a written letter stating that the application had been denied and informing petitioner that it could obtain access to the minutes of the hearing. 731 F. 3d, at 1221. It did not consider when the City provided

its written reasons to petitioner.

We granted certiorari, 572 U. S. ___ (2014), and now reverse the judgment of the Eleventh Circuit.

## II

### A

The first question we answer is whether the statute requires localities to provide reasons when they deny applications to build cell phone towers. We answer that question in the affirmative.

Our conclusion follows from the provisions of the Telecommunications Act. The Act generally preserves "the traditional authority of state and local governments to regulate the location, construction, and modification" of wireless communications facilities like cell phone towers, but imposes "specific limitations" on that authority. *Rancho Palos Verdes* v. *Abrams*, 544 U. S. 113, 115 (2005); see §332(c)(7)(B). One of those limitations is that any decision to deny a request to build a tower "shall be in writing and supported by substantial evidence contained in a written record." §332(c)(7)(B)(iii). Another is that parties adversely affected by a locality's decision may seek judicial review. §332(c)(7)(B)(v). In order to determine whether a locality's denial was supported by substantial evidence, as Congress directed, courts must be able to identify the reason or reasons why the locality denied the application. See *Rancho Palos Verdes*, 544 U. S., at 128 (BREYER, J., joined by O'Connor, Souter, and GINSBURG, JJ., concurring) (observing that the Act "requires local zoning boards . . . [to] give reasons for [their] denials 'in writing'").

The requirement that localities must provide reasons when they deny applications is further underscored by two of the other limitations on local authority set out in the Act. The Act provides that localities "shall not unreasonably discriminate among providers of functionally equivalent services," and may not regulate the construction of

personal wireless service facilities "on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communications Commission's] regulations concerning such emissions." §§332(c)(7)(B)(i)(I), (iv).[2]  Again, it would be considerably more difficult for a reviewing court to determine whether a locality had violated these substantive provisions if the locality were not obligated to state its reasons.

This conclusion is not just commonsensical, but flows directly from Congress' use of the term "substantial evidence."  The statutory phrase "substantial evidence" is a "term of art" in administrative law that describes how "an administrative record is to be judged by a reviewing court." *United States* v. *Carlo Bianchi & Co.*, 373 U. S. 709, 715 (1963).  There is no reason discernible from the text of the Act to think that Congress meant to use the phrase in a different way.  See *FAA* v. *Cooper*, 566 U. S. \_\_\_, \_\_\_ (2012) (slip op., at 6) ("[W]hen Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken" (internal quotation marks omitted)).  Indeed, for those who consider legislative history relevant, the Conference Report accompanying the Act confirmed as much when it noted that "[t]he phrase 'substantial evidence contained in a written record' is the traditional standard used for review of agency actions."  H. R. Conf. Rep. No. 104–458, p. 208 (1996).

By employing the term "substantial evidence," Congress thus invoked, among other things, our recognition that "the orderly functioning of the process of [substantial-

———————

[2] The last "limitation" listed in the Act provides that localities shall act on applications to construct personal wireless service facilities "within a reasonable period of time after the request is duly filed . . . taking into account the nature and scope of such request." §332(c)(7)(B)(ii).

evidence] review requires that the grounds upon which the administrative agency acted be clearly disclosed," and that "courts cannot exercise their duty of [substantial-evidence] review unless they are advised of the considerations underlying the action under review." *SEC* v. *Chenery Corp.*, 318 U. S. 80, 94 (1943); see also *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 43 (1983) (explaining that an agency must "articulate a satisfactory explanation for its action" to enable substantial-evidence review); *Beaumont, S. L. & W. R. Co.* v. *United States*, 282 U. S. 74, 86 (1930) ("Complete statements by the [agency] showing the grounds upon which its determinations rest are quite as necessary as are opinions of lower courts setting forth the reasons on which they base their decisions . . .").

In response, the City primarily argues that a reason-giving obligation would deprive it of local zoning authority. But Congress intended to place "specific limitations on the traditional authority of state and local governments" regarding cell phone tower siting applications. *Rancho Palos Verdes*, 544 U. S., at 115. One of those "limitations," §332(c)(7)(B), necessarily implied by the Act's "substantial evidence" requirement, is that local zoning authorities state their reasons when they deny applications.

In short, the statutory text and structure, and the concepts that Congress imported into the statutory framework, all point clearly toward the conclusion that localities must provide reasons when they deny cell phone tower siting applications. We stress, however, that these reasons need not be elaborate or even sophisticated, but rather, as discussed below, simply clear enough to enable judicial review.

## B

The second question we answer is whether these reasons must appear in the same writing that conveys the

locality's denial of an application. We answer that question in the negative.

Like our conclusion that localities must provide reasons, our conclusion that the reasons need not appear in a denial letter follows from the statutory text. Other than providing that a locality's reasons must be given in writing, nothing in that text imposes any requirement that the reasons be given in any particular form.

The Act's saving clause makes clear that, other than the enumerated limitations imposed on local governments by the statute itself, "nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." §332(c)(7)(A). Given this language, and the system of "cooperative federalism" on which the Act is premised, *Rancho Palos Verdes*, 544 U. S., at 128 (BREYER, J., concurring), we understand the enumerated limitations to set out an exclusive list. So while the text and structure of the Act render it inescapable that localities must provide reasons in writing when they deny applications, we can locate in the Act no command—either explicit or implicit—that localities must provide those reasons in a specific document.

We therefore conclude that Congress imposed no specific requirement on that front, but instead permitted localities to comply with their obligation to give written reasons so long as the locality's reasons are stated clearly enough to enable judicial review. Although the statute does not require a locality to provide its written reasons in any particular format, and although a locality may rely on detailed meeting minutes as it did here, we agree with the Solicitor General that "the local government may be better served by including a separate statement containing its reasons." Brief for United States as *Amicus Curiae* 26; see also *id.,* at 34. If the locality writes a short statement

providing its reasons, the locality can likely avoid prolong-
ing the litigation—and adding expense to the taxpayers,
the companies, and the legal system—while the parties
argue about exactly what the sometimes voluminous
record means. Moreover, in that circumstance, the locality
need not worry that, upon review of the record, a court will
either find that it could not ascertain the locality's reasons
or mistakenly ascribe to the locality a rationale that was
not in fact the reason for the locality's denial.

We hasten to add that a locality cannot stymie or bur-
den the judicial review contemplated by the statute by
delaying the release of its reasons for a substantial time
after it conveys its written denial. The statute provides
that an entity adversely affected by a locality's decision
may seek judicial review within 30 days of the decision.
§332(c)(7)(B)(v). Because an entity may not be able to
make a considered decision whether to seek judicial re-
view without knowing the reasons for the denial of its
application, and because a court cannot review the denial
without knowing the locality's reasons, the locality must
provide or make available its written reasons at essentially
the same time as it communicates its denial.[3]

––––––––––

[3] THE CHIEF JUSTICE's dissent rejects this particular requirement, and
instead invents a process that turns judicial review on its head. Rather
than give effect to a process that would permit an entity seeking to
challenge a locality's decision to see the locality's written reasons before
it files its suit—and the dissent agrees that the statute requires that a
locality convey its reasons in writing, see *post*, at 5—the dissent would
fashion a world in which a locality can wait until a lawsuit is com-
menced and a court orders it to state its reasons. The entity would thus
be left to guess at what the locality's written reasons will be, write a
complaint that contains those hypotheses, and risk being sandbagged
by the written reasons that the locality subsequently provides in
litigation after the challenging entity has shown its cards. The review-
ing court would then need to ensure that those reasons are not *post hoc*
rationalizations, see *Burlington Truck Lines, Inc.* v. *United States*, 371
U. S. 156, 168 (1962), but the dissent offers no guidance as to how a
reviewing court that has never seen near-contemporaneous reasons

This rule ought not to unduly burden localities given the range of ways in which localities can provide their reasons. Moreover, the denial itself needs only to be issued (or the application otherwise acted upon) "within a reasonable period of time." §332(c)(7)(B)(ii). In an interpretation we have recently upheld, see *Arlington* v. *FCC*, 569 U. S. ___ (2013), the Federal Communications Commission (FCC) has generally interpreted this provision to allow localities 90 days to act on applications to place new antennas on existing towers and 150 days to act on other siting applications. *In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(b)*, 24 FCC Rcd. 13994, 13995, ¶4 (2009). If a locality is not in a position to provide its reasons promptly, the locality can delay the issuance of its denial within this 90- or 150-day window, and instead release it along with its reasons once those reasons are ready to be provided. Only once the denial is issued would the 30-day commencement-of-suit clock begin.[4]

## III

Petitioner offers four reasons why, in its view, our analysis in Part II–B is incorrect. Petitioner argues that the statute requires that a locality's reasons appear in the writing conveying the denial itself, but none of petitioner's

––––––––

would conduct that inquiry.

[4]The City urges us to hold that the clock does not begin to run until after the reasons are given. We cannot so hold, however, without rewriting the statutory text. The Act provides that a lawsuit may be filed by "[a]ny person adversely affected by any final action or failure to act . . . within 30 days after such action or failure to act." 47 U. S. C. §332(c)(7)(B)(v). The relevant "final action" is the issuance of the written notice of denial, not the subsequent issuance of reasons explaining the denial. See *Bennett* v. *Spear*, 520 U. S. 154, 177–178 (1997) (agency action is "final" if it "mark[s] the consummation of the agency's decisionmaking process" and determines "rights or obligations" or triggers "legal consequences" (internal quotation marks omitted)).

reasons are persuasive.

First, petitioner argues that the word "decision" in the statute—the thing that must be "in writing"—connotes a written document that itself provides all the reasons for a given judgment. See Brief for Petitioner 24 (quoting Black's Law Dictionary 407 (6th ed. 1990) (a "decision" is a written document providing "'the reasons given for [a] judgment'")). But even petitioner concedes, with its preferred dictionary in hand, that the word "decision" can also mean "something short of a statement of reasons explaining a determination." Brief for Petitioner 24 (citing Black's Law Dictionary, at 407).[5]

Second, petitioner claims that other provisions in the Act use the word "notify" when the Act means to impose only a requirement that a judgment be communicated.[6] Because the provision at issue here does not use the word "notify," petitioner argues, it must contemplate something

––––––––––

[5] One of petitioner's *amici* argues that Congress has used the word "decision" in the context of other communications laws to mean something more than a judgment or verdict. See Brief for Chamber of Commerce of the United States of America (Chamber) et al. 9–13. But while it is true that a word used across "the same act" should be given the same meaning, see *Taniguchi* v. *Kan Pacific Saipan, Ltd.*, 566 U. S. ___, ___ (2012) (slip op., at 10), the Chamber's evidence is less persuasive because it arises out of entirely different "acts" and does not involve any term of art. By relying on other parts of Title 47 of the U. S. Code—some enacted in the Communications Act of 1934 decades before the enactment of the Telecommunications Act of 1996 at issue here—the Chamber stretches to invoke this canon of construction beyond its most forceful application. See A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 172–173 (2012).

[6] For example, petitioner cites §11 (FCC must "notify the parties concerned" when it makes a "determination and order" regarding a railroad or telegraph company's failure to maintain and operate a telegraph line for public use) and §398(b)(5) ("Whenever the Secretary [of Commerce] makes a final determination . . . that a recipient" of federal funds has engaged in impermissible discrimination, the Secretary shall "notify the recipient in writing of such determination . . ."). Brief for Petitioner 24–25.

more than a judgment. This does not logically follow. For one thing, the statute at issue here does not use any verb at all to describe the conveying of information from a locality to an applicant; it just says that a denial "shall be in writing and supported by substantial evidence contained in a written record." §332(c)(7)(B)(iii). But more to the point, "notify" is a verb the use—or nonuse—of which does not reveal what the thing to be notified of or about is.

Third, petitioner contends that the "substantial evidence" requirement itself demands that localities identify their reasons in their written denials. See Brief for Petitioner 23. Certainly, as discussed above, the phrase "substantial evidence" requires localities to give reasons, but it says nothing on its own about the document in which those reasons must be stated or presented to a reviewing court.

Finally, petitioner invokes the statutory requirement that any adversely affected person shall have their challenge heard by a court "on an expedited basis." §332(c)(7)(B)(v). See Brief for Petitioner 14–15, 28. As long as the reasons are provided in a written record, however, and as long as they are provided in such a manner that is clear enough and prompt enough to enable judicial review, there is no reason to require that those reasons be provided in the written denial itself.

We acknowledge that petitioner, along with those Courts of Appeals that have required a locality's reasons to appear in its written denial itself, have offered plausible bases for a rule that would require as much. See, *e.g., Todd,* 244 F. 3d, at 60 ("A written record can create difficulties in determining the rationale behind a board's decision . . ."). Congress could adopt such a rule if it were so inclined, but it did not do so in this statute. It is not our place to legislate another approach.

## IV

Thus, we hold that the Act requires localities to provide reasons when they deny cell phone tower siting applications, but that the Act does not require localities to provide those reasons in written denial letters or notices themselves. A locality may satisfy its statutory obligations if it states its reasons with sufficient clarity in some other written record issued essentially contemporaneously with the denial. In this case, the City provided its reasons in writing and did so in the acceptable form of detailed minutes of the City Council meeting. The City, however, did not provide its written reasons essentially contemporaneously with its written denial. Instead, the City issued those detailed minutes 26 days after the date of the written denial and just 4 days before petitioner's time to seek judicial review would have expired.[7] The City therefore did not comply with its statutory obligations. We do not consider questions regarding the applicability of principles of harmless error or questions of remedy, and leave those for the Eleventh Circuit to address on remand.

\*    \*    \*

For the foregoing reasons, we reverse the judgment below and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

---

[7] Though petitioner arranged for a transcript of the meeting to be recorded on its own initiative and at its own expense, see App. 109–275, the fact that petitioner took steps to reduce oral statements made at the City Council meeting to writing cannot be said to satisfy the obligation that Congress placed on the City to state clearly its reasons, and to do so in a writing it provides or makes available.

# SUPREME COURT OF THE UNITED STATES

---

No. 13–975

---

## T-MOBILE SOUTH, LLC, PETITIONER *v.* CITY OF ROSWELL, GEORGIA

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 14, 2015]

JUSTICE ALITO, concurring.

I concur in the Court's opinion because I agree that Congress, by using the term "substantial evidence," intended to invoke administrative law principles. One such principle, as the Court explains, is the requirement that agencies give reasons. I write separately, however, because three other traditional administrative law principles may also apply.

First, a court must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc.* v. *Arkansas-Best Freight System, Inc.,* 419 U. S. 281, 286 (1974). In the context of 47 U. S. C. §332(c)(7), which leaves in place almost the entirety of a local government's authority, a succinct statement that a permit has been denied because the tower would be esthetically incompatible with the surrounding area should suffice. Nothing in this statute imposes an opinion-writing requirement.

Second, even if a locality has erred, a court must not invalidate the locality's decision if the error was harmless. "In administrative law, as in federal civil and criminal litigation, there is a harmless error rule." *National Assn. of Home Builders* v. *Defenders of Wildlife*, 551 U. S. 644, 659–660 (2007) (internal quotation marks omitted). Here, for instance, I have trouble believing that T-Mobile South,

LLC—which actively participated in the decisionmaking process, including going so far as to transcribe the public hearing—was prejudiced by the city of Roswell's delay in providing a copy of the minutes.

Third, the ordinary rule in administrative law is that a court must remand errors to the agency "except in rare circumstances." *Florida Power & Light Co.* v. *Lorion*, 470 U. S. 729, 744 (1985). Nothing we say today should be read to suggest that when a locality has erred, the inevitable remedy is that a tower must be built. The Court has not passed on what remedial powers a "court of competent jurisdiction" may exercise. §332(c)(7)(B)(v). This unanswered question is important given the federalism implications of this statute.

I do not understand the Court's opinion to disagree with this analysis. On that understanding, I join the Court's opinion.

# SUPREME COURT OF THE UNITED STATES

No. 13–975

### T-MOBILE SOUTH, LLC, PETITIONER *v.* CITY OF ROSWELL, GEORGIA

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 14, 2015]

CHIEF JUSTICE ROBERTS, with whom JUSTICE GINSBURG joins, and with whom JUSTICE THOMAS joins as to Part I, dissenting.

The statute at issue in this case provides that "[a]ny decision . . . to deny a request . . . shall be in writing and supported by substantial evidence contained in a written record." 47 U. S. C. §332(c)(7)(B)(iii). The Court concludes that the City loses this case not because it failed to provide its denial in writing. It did provide its denial in writing. Nor does the City lose because the denial was not supported by substantial evidence in a written record. The City compiled a written record; whether that record contained substantial evidence supporting the denial is not at issue here and has not been decided. Nor does the City lose because its denial was not accompanied by a statement of reasons apart from the written record. A sharp conflict had developed in the lower courts over the necessity of such a separate statement, and the Court today squarely holds that one is not required. *Ante,* at 5, 8–11. No, the City instead loses because of a question of timing: The written record was not made available roughly the same day as the denial—a requirement found nowhere in the text of the statute.

The Court says this timing requirement is necessary for judicial review of whether the denial is supported by

substantial evidence. A reviewing court, however, can carry out its function just as easily whether the record is submitted four weeks or four days before the lawsuit is filed—or four days *after*, for that matter. The Court also supports its timing rule by saying that the company whose application is denied needs the time to carefully consider whether to seek review. But cell service providers are not Mom and Pop operations. As this case illustrates, they participate extensively in the local government proceedings, and do not have to make last-second, uninformed decisions on whether to seek review.

The City here fully complied with its obligations under the statute: It issued its decision in writing, and it submitted a written record containing—so far as we know— substantial evidence supporting that decision. I respectfully dissent from the Court's contrary conclusion.

I

Section 332(c)(7), enacted as part of the Telecommunications Act of 1996, places several limits on local governments' authority to regulate the siting of cell towers and other telecommunications facilities. A locality's regulations must not unreasonably discriminate among service providers, effectively prohibit the provision of service, or rest on concerns about the environmental effects of radio emissions. See §§332(c)(7)(B)(i), (iv). In addition, the provision central to this case specifies that "[a]ny decision by a State or local government . . . to deny a request to place, construct, or modify" a cell tower "shall be in writing and supported by substantial evidence contained in a written record." §332(c)(7)(B)(iii). And another provision authorizes expedited judicial review of a locality's alleged failure to comply with these rules. See §332(c)(7)(B)(v).

After the city council of Roswell voted to deny T-Mobile's application to build a cell tower, the City sent T-Mobile a short letter that announced the denial but provided no

further explanation. The question T-Mobile has presented to this Court is whether such a letter satisfies the "decision . . . in writing" requirement of Section 332(c)(7)(B)(iii). See Pet. for Cert. i.

I would hold it does. The City's letter was certainly in writing. And it certainly memorialized the denial of T-Mobile's application. So T-Mobile's only hope is that the lack of explanation for the denial means the letter is not truly a "decision." But like the majority, I reject T-Mobile's contention that the term "decision" inherently demands a statement of reasons. Dictionary definitions support that conclusion. See *ante,* at 12 (citing Black's Law Dictionary); see also B. Garner, A Dictionary of Modern Legal Usage 251 (2d ed. 1995) (grouping "decision" with "judgment," as distinct from "opinion").

A comparison between Section 332(c)(7)(B)(iii) and other statutory provisions that were on the books in 1996 also suggests that when Congress wants decisionmakers to supply explanations, it says so. Consider first the Administrative Procedure Act. In the context of formal adjudication and rulemaking, it demands that "decisions . . . include a statement of . . . findings and conclusions, *and the reasons or basis therefor*, on all the material issues." 5 U. S. C. §557(c)(A) (1994 ed.) (emphasis added). Even in informal proceedings, an agency must give prompt notice of the denial of a written application, and, "[e]xcept in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by *a brief statement of the grounds for denial.*" §555(e) (emphasis added).

The Communications Act of 1934, which the Telecommunications Act overhauled, itself contains a similar express requirement. Section 309 allows an interested party to petition the Federal Communications Commission to deny a license application. 47 U. S. C. §309(d)(1) (1994 ed.). If the FCC decides to grant an application despite

such a petition, it must "issue a concise statement of the reasons for denying the petition." §309(d)(2). And a provision added along with Section 332(c)(7) in the Telecommunications Act provides that when the FCC grants or denies a petition for regulatory forbearance, it "shall *explain* its decision in writing." §160(c) (2000 ed.) (emphasis added). Many other statutes in effect in 1996 could be added to the list. See, *e.g.,* 19 U. S. C. §1515(a) (1994 ed.) (notice of customs protest denial "shall include a statement of the reasons for the denial"); 30 U. S. C. §944 (1994 ed.) (individual whose claim for black lung benefits "is denied shall receive . . . a written statement of the reasons for denial"); 38 U. S. C. §5104(b) (1994 ed.) (notice of denial of veterans benefits must include "a statement of the reasons for the decision").

Given the commonplace nature of express requirements that reasons be given—and the inclusion of such provisions in the Administrative Procedure Act, the original Communications Act, and another provision of the Telecommunications Act—the absence of one in Section 332(c)(7)(B)(iii) is telling, and supports reading "decision . . . in writing" to demand nothing more than what it says: a written document that communicates the town's denial.

In my view, resolving that interpretive question in the City's favor also resolves the case as it stands in this Court. Although Section 332(c)(7)(B)(iii) goes on to require that a denial be "supported by substantial evidence contained in a written record," the adequacy of the City's written record is not properly before us. As the Eleventh Circuit noted in its opinion below, the "sole issue" before it was the "in writing" requirement; it did not examine whether the City's denial was supported by substantial evidence. 731 F. 3d 1213, 1221, n. 7 (2013). The Court today also—correctly—does not decide whether substantial evidence supported the City's denial. The Eleventh Circuit's judgment therefore ought to be affirmed and the

case remanded to the District Court for further proceedings on T-Mobile's remaining challenges.

## II

The Court agrees that the City was not required to explain its reasoning in its denial letter, but it nonetheless rules for T-Mobile. The improbable linchpin of this outcome is the City's failure to finalize the minutes of the April 12 city council meeting until May 10. Improbable because, so far as I can tell, T-Mobile never even mentioned this timeline, let alone based an argument on it, in its filings in the lower courts or its petition for certiorari. Nor did the Eleventh Circuit address this timing question in any way. Cf. *Zivotofsky* v. *Clinton*, 566 U. S. ___, ___ (2012) (slip op., at 12) ("Ordinarily, we do not decide in the first instance issues not decided below." (internal quotation marks omitted)).

The Court nonetheless rules against Roswell on this ground, proceeding in two steps: First it concludes that a town must provide written reasons in *some* form (the minutes being the only candidate here); then it decides a town must make those reasons available "essentially contemporaneously" with its decision (the final minutes were not). *Ante,* at 14. In my view, the first step is justified by the statutory text, but the second is not.

The need to provide reasons in some form follows from the portion of Section 332(c)(7)(B)(iii) requiring that denials be "supported by substantial evidence contained in a written record." Like the majority, I read this phrase as specifying a familiar standard of review to be used if a denial is challenged in court. And like the majority, I agree that substantial evidence review requires that a decisionmaker's reasons be identifiable in the written record. If a reviewing court cannot identify any of a town's reasons for denying an application, it cannot determine whether substantial evidence supports those reasons, and

the town loses.

But then the Court goes a step further and creates a timing rule: A town must provide "its written reasons at essentially the same time as it communicates its denial." *Ante,* at 10. This timing rule is nowhere to be found in the text of Section 332(c)(7)(B)—text that *expressly* establishes other time limits, both general and specific. See §332(c)(7)(B)(ii) (requiring localities to act on siting requests "within a reasonable period of time"); §332(c) (7)(B)(v) (giving injured parties 30 days to seek judicial review). Despite its assertion that the statute's "enumerated limitations" constitute "an exclusive list," *ante,* at 9, the Court offers two justifications for its inference of this additional, unenumerated limitation.

The first is that "a court cannot review the denial without knowing the locality's reasons," so it would "stymie" judicial review to allow delay between the issuance of the decision and the statement of reasons. *Ante,* at 10. This makes little sense. The Court's "essentially contemporaneous" requirement presumably means the town must produce its reasons within a matter of days (though the majority never says how many). But a reviewing court does not need to be able to discern the town's reasons within mere days of the decision. At that point no one has even asked the court to review the denial. The fact that a court cannot conduct review without knowing the reasons simply means that if the town has not already made the record available, it must do so by whatever deadline the court sets. The court should proceed "on an expedited basis," §332(c)(7)(B)(v), but that hardly means it will need the record within days of the town's decision. And in this case there is no indication that the City's submission of the written record was untimely or delayed the District Court's review.

The Court's second justification focuses on the denied applicant, which must choose within 30 days from the

denial whether to take the town to court. §332(c)(7)(B)(v). "[W]ithout knowing the locality's reasons," the majority says, the applicant "may not be able to make a considered decision whether to seek judicial review." *Ante,* at 10. This concern might have force if towns routinely made these decisions in secret, closed-door proceedings, or if applicants were unsophisticated actors. But the local zoning board or town council is not the Star Chamber, and a telecommunications company is no babe in the legal woods. Almost invariably in cases addressing Section 332(c)(7), the relevant local authority has held an open meeting at which the applicant was present and the issues publicly aired. In this case and others, T-Mobile has brought its own court reporter, ensuring that it has a verbatim transcript of the meeting well before the town is likely to finalize its minutes. See Brief for Petitioner 12, n. 2; *T-Mobile South, LLC* v. *City of Milton, Georgia*, 728 F. 3d 1274, 1277 (CA11 2013). I strongly doubt that a sophisticated, well-lawyered company like T-Mobile—with extensive experience with these particular types of proceedings—would have any trouble consulting its interests and deciding whether to seek review before it had received a written explanation from the town. The Court worries about towns "sandbagg[ing]" companies with unexpected reasons, *ante,* at 10, n. 3, but if those reasons in fact come out of nowhere, they will not be supported by substantial evidence in the record. And if the company's initial complaint mistakes the town's reasoning, the company will have no difficulty amending its allegations. See Fed. Rule Civ. Proc. 15(a).

In sum, there is nothing impractical about reading the statutory text to require only that the reasons implied by the term "substantial evidence" be discernible to the court when it conducts substantial evidence review. Demanding "essentially contemporaneous" written reasons adds a requirement that Congress has included expressly in

many other statutes, but not in this one.  See *supra,* at 3–4.

\*     \*     \*

For the foregoing reasons, the Court's opinion and judgment are wrong.  But this is not a "the sky is falling" dissent.  At the end of the day, the impact on cities and towns across the Nation should be small, although the new unwritten requirement could be a trap for the unwary hamlet or two.  All a local government need do is withhold its final decision until the minutes are typed up, and make the final decision and the record of proceedings (with discernible reasons) available together.

Today's decision is nonetheless a bad break for Roswell.  Or maybe not.  The Court leaves open the question of remedy, *ante,* at 14, and it may be that failure to comply with the "in writing" requirement as construed by the Court can be excused as harmless error in appropriate cases.  It is hard to see where the harm is here.  T-Mobile somehow managed to make the tough call to seek review of the denial of an application it had spent months and many thousands of dollars to obtain, based on a hearing it had attended.  And nothing about Roswell's failure to meet the "contemporaneously" requirement delayed, much less "stymied," judicial review.

The Court today resolves the conflict over whether a town must provide a statement of reasons with its final decision, apart from the written record.  We now know it need not.  As the Court explains, "nothing in [the] text [of the Act] imposes any requirement that the reasons be given in any particular form," and there is "in the Act no command—either explicit or implicit—that localities must provide those reasons in a specific document." *Ante,* at 9.  Good analysis—which also should have been followed to reject the timing requirement the Court creates today.

I respectfully dissent.

# SUPREME COURT OF THE UNITED STATES

_____

No. 13–975

_____

## T-MOBILE SOUTH, LLC, PETITIONER *v.*
## CITY OF ROSWELL, GEORGIA

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[January 14, 2015]

JUSTICE THOMAS, dissenting.

I join Part I of THE CHIEF JUSTICE's dissent, which says all the Court needed to say to resolve this case. I write separately to express my concern about the Court's eagerness to reach beyond the bounds of the present dispute to create a timing requirement that finds no support in the text or structure of the statute. We have been unwilling to impose procedural requirements on federal agencies in the absence of statutory command, even while recognizing that an agency's failure to make its decisions known at the time it acts may burden regulated parties. See, *e.g., Pension Benefit Guaranty Corporation* v. *LTV Corp.*, 496 U. S. 633, 653–655 (1990). When a State vests its municipalities with authority to exercise a core state power, those municipalities deserve at least as much respect as a federal agency. But today, the majority treats them as less than conscripts in "the national bureaucratic army," *FERC* v. *Mississippi*, 456 U. S. 742, 775 (1982) (O'Connor, J., concurring in part and dissenting in part). I respectfully dissent.