Justice SOTOMAYORdelivered the opinion of the Court.
The Telecommunications Act of 1996 provides, in relevant part, that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 110 Stat. 151, 47 U.S.C. § 332(c)(7)(B)(iii). The question presented is whether, and in what form, localities must provide reasons when they deny telecommunication companies' applications to construct cell phone towers. We hold that localities must provide or make available their reasons, but that those reasons need not appear in the written denial letter or notice provided by the locality. Instead, the locality's reasons *812 may appear in some other written record so long as the reasons are sufficiently clear and are provided or made accessible to the applicant essentially contemporaneously with the written denial letter or notice.
I
In February 2010, petitioner T-Mobile South, LLC, applied to build a new, 108-foot-tall cell phone tower on 2.8 acres of vacant residential property in the city of Roswell, Georgia (City). Roswell's city ordinances require that any cell phone tower proposed for a residential zoning district must take the form of an "alternative tower structure"-an artificial tree, clock tower, steeple, or light pole-that, in the opinion of the city council (City Council or Council), is "compatible with the natural setting and surrounding structures" and that effectively camouflages the tower. Code of Ordinances §§ 21.2.2, 21.2.5(a); see App. 68, 75. In accordance with these provisions, petitioner's application proposed a structure in the shape of an artificial tree or "monopine." Id.,at 42.
The City's Planning and Zoning Division reviewed petitioner's application, along with a substantial number of letters and petitions opposing it, and ultimately issued a memorandum to the City Council concluding that the application met all of the requirements set out in the City's ordinances. It recommended that the City Council approve the application on three conditions to which petitioner was prepared to agree.
The City Council then held a 2-hour-long public hearing on April 12, 2010, to consider petitioner's application. Petitioner arranged privately to have the hearing transcribed, and, as discussed below, the City subsequently issued detailed minutes summarizing the proceedings. At the hearing, after the Planning and Zoning Division presented its recommendation and after petitioner's representatives made a presentation in support of the application, a number of residents raised concerns. Among these were concerns that the tower would lack aesthetic compatibility, that the technology was outdated and unnecessary, and that the tower would be too tall. Petitioner's representatives responded by reiterating that it had met all of the ordinance's requirements and by providing testimony from a property appraiser that placement of cell phone towers does not reduce property values.
Members of the City Council then commented on the application. One member of the six-person Council was recused, see id.,at 111 (hearing transcript); id.,at 322 (meeting minutes), leaving five voting members. Member Igleheart said that other carriers had sufficient coverage in the area and that the City did not need to level the playing field for petitioner. Id.,at 173-174 (hearing transcript). He also stated that his "[b]ottom line" was that he did not think it was "appropriate for residentially zoned properties to have the cell towers in their location." Id.,at 174 (hearing transcript); id.,at 338 (meeting minutes). Member Dippolito found it difficult to believe that the tower would not negatively impact the area and doubted that it would be compatible with the natural setting. Id.,at 175-176 (hearing transcript); id.,at 339 (meeting minutes). Member Wynn expressed concerns about the lack of a backup generator for emergency services, id.,at 172 (hearing transcript), and did not think the tower would be "compatible with this area," id.,at 176 (hearing transcript); id.,at 339 (meeting minutes). Member Orlans said only that he was impressed with the information put together by both sides. Id.,at 173 (hearing transcript); id.,at 337 (meeting minutes). Finally, Member Price, the liaison to the Planning and Zoning Division, made a motion *813 to deny the application. She said that the tower would be aesthetically incompatible with the natural setting, that it would be too tall, and that its proximity to other homes would adversely affect the neighbors and the resale value of their properties. Id.,at 176-177 (hearing transcript); id.,at 339-340 (meeting minutes). The motion was seconded, and then passed unanimously. Id.,at 177 (hearing transcript); id.,at 340 (meeting minutes).
Two days later, on April 14, 2010, the Planning and Zoning Division sent a letter to petitioner that said in its entirety:
"Please be advised the City of Roswell Mayor and City Council denied the request from T-Mobile for a 108' mono-pine alternative tower structure during their April 12, 2010 hearing. The minutes from the aforementioned hearing may be obtained from the city clerk. Please contact Sue Creel or Betsy Branch at [phone number].
"If you have any additional questions, please contact me at [phone number]." Id.,at 278.
The detailed written minutes of the hearing, however, were not approved and published by the City until 26 days later, on May 10, 2010. See id.,at 321-341 (meeting minutes).[1]
On May 13, 2010, 3 days after the detailed minutes were published-and now 29 days after the City denied petitioner's application-petitioner filed suit in Federal District Court. It alleged that the denial of the application was not supported by substantial evidence in the record, and would effectively prohibit the provision of wireless service in violation of the Telecommunications Act of 1996 (Act). The parties filed cross-motions for summary judgment.
The District Court granted petitioner's motion for summary judgment, concluding that the City had violated the Act when it failed to issue a written decision that stated the reasons for denying petitioner's application. The District Court interpreted the Act to require that a written denial letter or notice describe the reasons for the denial and that those reasons be sufficiently explained to allow a reviewing court to evaluate them against the written record.
The Eleventh Circuit reversed. 731 F.3d 1213 (2013). It explained that, in T-Mobile South, LLC v. Milton,728 F.3d 1274 (2013), which was decided after the District Court's decision in this case, it had held that "to the extent that the decision must contain grounds or reasons or explanations, it is sufficient if those are contained in a different written document or documents that the applicant is given or has access to." Id.,at 1285. The Eleventh Circuit acknowledged that the Courts of Appeals had split on that question, and that it had departed from the majority rule. Compare Southwestern Bell Mobile Systems, Inc. v. Todd,244 F.3d 51, 60 (C.A.1 2001)(requiring that a locality issue a written denial that itself contains a "sufficient explanation of the reasons for the *814 permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons"); New Par v. Saginaw,301 F.3d 390, 395-396 (C.A.6 2002); MetroPCS, Inc. v. City and County of San Francisco,400 F.3d 715, 723 (C.A.9 2005), with AT & T Wireless PCS, Inc. v. City Council of Virginia Beach,155 F.3d 423, 429 (C.A.4 1998)(holding that written minutes of a meeting and the word "denied" stamped on a letter describing the application were sufficient). Applying its rule to this case, the Eleventh Circuit found that the requirements of 47 U.S.C. § 332(c)(7)(B)(iii)were satisfied because petitioner had its own transcript as well as a written letter stating that the application had been denied and informing petitioner that it could obtain access to the minutes of the hearing. 731 F.3d, at 1221. It did not consider when the City provided its written reasons to petitioner.
We granted certiorari, 572 U.S. ----, 134 S.Ct. 2136, 188 L.Ed.2d 1123 (2014), and now reverse the judgment of the Eleventh Circuit.
II
A
The first question we answer is whether the statute requires localities to provide reasons when they deny applications to build cell phone towers. We answer that question in the affirmative.
Our conclusion follows from the provisions of the Telecommunications Act. The Act generally preserves "the traditional authority of state and local governments to regulate the location, construction, and modification" of wireless communications facilities like cell phone towers, but imposes "specific limitations" on that authority. Rancho Palos Verdes v. Abrams,544 U.S. 113, 115, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005); see § 332(c)(7)(B). One of those limitations is that any decision to deny a request to build a tower "shall be in writing and supported by substantial evidence contained in a written record." § 332(c)(7)(B)(iii). Another is that parties adversely affected by a locality's decision may seek judicial review. § 332(c)(7)(B)(v). In order to determine whether a locality's denial was supported by substantial evidence, as Congress directed, courts must be able to identify the reason or reasons why the locality denied the application. See Rancho Palos Verdes,544 U.S., at 128, 125 S.Ct. 1453(BREYER, J., joined by O'Connor, Souter, and GINSBURG, JJ., concurring) (observing that the Act "requires local zoning boards ... [to] give reasons for [their] denials 'in writing' ").
The requirement that localities must provide reasons when they deny applications is further underscored by two of the other limitations on local authority set out in the Act. The Act provides that localities "shall not unreasonably discriminate among providers of functionally equivalent services," and may not regulate the construction of personal wireless service facilities "on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communications Commission's] regulations concerning such emissions." §§ 332(c)(7)(B)(i)(I), (iv).[2]Again, it would be considerably more difficult for a reviewing court to determine whether a locality had violated these substantive provisions if the locality were not obligated to state its reasons.
*815 This conclusion is not just commonsensical, but flows directly from Congress' use of the term "substantial evidence." The statutory phrase "substantial evidence" is a "term of art" in administrative law that describes how "an administrative record is to be judged by a reviewing court." United States v. Carlo Bianchi & Co.,373 U.S. 709, 715, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963). There is no reason discernible from the text of the Act to think that Congress meant to use the phrase in a different way. See FAA v. Cooper,566 U.S. ----, ----, 132 S.Ct. 1441, 1449, 182 L.Ed.2d 497 (2012)( "[W]hen Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken" (internal quotation marks omitted)). Indeed, for those who consider legislative history relevant, the Conference Report accompanying the Act confirmed as much when it noted that "[t]he phrase 'substantial evidence contained in a written record' is the traditional standard used for review of agency actions." H.R. Conf. Rep. No. 104-458, p. 208(1996), 1996 U.S.C.C.A.N. 10.
By employing the term "substantial evidence," Congress thus invoked, among other things, our recognition that "the orderly functioning of the process of [substantial-evidence] review requires that the grounds upon which the administrative agency acted be clearly disclosed," and that "courts cannot exercise their duty of [substantial-evidence] review unless they are advised of the considerations underlying the action under review." SEC v. Chenery Corp.,318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943); see also Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)(explaining that an agency must "articulate a satisfactory explanation for its action" to enable substantial-evidence review); Beaumont, S.L. W.R. Co. v. United States,282 U.S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221 (1930)("Complete statements by the [agency] showing the grounds upon which its determinations rest are quite as necessary as are opinions of lower courts setting forth the reasons on which they base their decisions ...").
In response, the City primarily argues that a reason-giving obligation would deprive it of local zoning authority. But Congress intended to place "specific limitations on the traditional authority of state and local governments" regarding cell phone tower siting applications. Rancho Palos Verdes,544 U.S., at 115, 125 S.Ct. 1453. One of those "limitations," § 332(c)(7)(B), necessarily implied by the Act's "substantial evidence" requirement, is that local zoning authorities state their reasons when they deny applications.
In short, the statutory text and structure, and the concepts that Congress imported into the statutory framework, all point clearly toward the conclusion that localities must provide reasons when they deny cell phone tower siting applications. We stress, however, that these reasons need not be elaborate or even sophisticated, but rather, as discussed below, simply clear enough to enable judicial review.
B
The second question we answer is whether these reasons must appear in the same writing that conveys the locality's denial of an application. We answer that question in the negative.
Like our conclusion that localities must provide reasons, our conclusion that the reasons need not appear in a denial letter follows from the statutory text. Other than providing that a locality's reasons must be given in writing, nothing in that *816 text imposes any requirement that the reasons be given in any particular form.
The Act's saving clause makes clear that, other than the enumerated limitations imposed on local governments by the statute itself, "nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." § 332(c)(7)(A). Given this language, and the system of "cooperative federalism" on which the Act is premised, Rancho Palos Verdes,544 U.S., at 128, 125 S.Ct. 1453(BREYER, J., concurring), we understand the enumerated limitations to set out an exclusive list. So while the text and structure of the Act render it inescapable that localities must provide reasons in writing when they deny applications, we can locate in the Act no command-either explicit or implicit-that localities must provide those reasons in a specific document.
We therefore conclude that Congress imposed no specific requirement on that front, but instead permitted localities to comply with their obligation to give written reasons so long as the locality's reasons are stated clearly enough to enable judicial review. Although the statute does not require a locality to provide its written reasons in any particular format, and although a locality may rely on detailed meeting minutes as it did here, we agree with the Solicitor General that "the local government may be better served by including a separate statement containing its reasons." Brief for United States as Amicus Curiae26; see also id.,at 34. If the locality writes a short statement providing its reasons, the locality can likely avoid prolonging the litigation-and adding expense to the taxpayers, the companies, and the legal system-while the parties argue about exactly what the sometimes voluminous record means. Moreover, in that circumstance, the locality need not worry that, upon review of the record, a court will either find that it could not ascertain the locality's reasons or mistakenly ascribe to the locality a rationale that was not in fact the reason for the locality's denial.
We hasten to add that a locality cannot stymie or burden the judicial review contemplated by the statute by delaying the release of its reasons for a substantial time after it conveys its written denial. The statute provides that an entity adversely affected by a locality's decision may seek judicial review within 30 days of the decision. § 332(c)(7)(B)(v). Because an entity may not be able to make a considered decision whether to seek judicial review without knowing the reasons for the denial of its application, and because a court cannot review the denial without knowing the locality's reasons, the locality must provide or make available its written reasons at essentially the same time as it communicates its denial.[3]
*817 This rule ought not to unduly burden localities given the range of ways in which localities can provide their reasons. Moreover, the denial itself needs only to be issued (or the application otherwise acted upon) "within a reasonable period of time." § 332(c)(7)(B)(ii). In an interpretation we have recently upheld, see Arlington v. FCC,569 U.S. ----, 133 S.Ct. 1863, --- L.Ed.2d ---- (2013), the Federal Communications Commission (FCC) has generally interpreted this provision to allow localities 90 days to act on applications to place new antennas on existing towers and 150 days to act on other siting applications. In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(b),24 FCC Rcd. 13994, 13995, ¶ 4 (2009). If a locality is not in a position to provide its reasons promptly, the locality can delay the issuance of its denial within this 90- or 150-day window, and instead release it along with its reasons once those reasons are ready to be provided. Only once the denial is issued would the 30-day commencement-of-suit clock begin.[4]
III
Petitioner offers four reasons why, in its view, our analysis in Part II-B is incorrect. Petitioner argues that the statute requires that a locality's reasons appear in the writing conveying the denial itself, but none of petitioner's reasons are persuasive.
First, petitioner argues that the word "decision" in the statute-the thing that must be "in writing"-connotes a written document that itself provides all the reasons for a given judgment. See Brief for Petitioner 24 (quoting Black's Law Dictionary 407 (6th ed. 1990) (a "decision" is a written document providing " 'the reasons given for [a] judgment' ")). But even petitioner concedes, with its preferred dictionary in hand, that the word "decision" can also mean "something short of a statement of reasons explaining a determination." Brief for Petitioner 24 (citing Black's Law Dictionary, at 407).[5]
Second, petitioner claims that other provisions in the Act use the word "notify" when the Act means to impose only a requirement that a judgment be communicated.
*818 [6]Because the provision at issue here does not use the word "notify," petitioner argues, it must contemplate something more than a judgment. This does not logically follow. For one thing, the statute at issue here does not use any verb at all to describe the conveying of information from a locality to an applicant; it just says that a denial "shall be in writing and supported by substantial evidence contained in a written record." § 332(c)(7)(B)(iii). But more to the point, "notify" is a verb the use-or nonuse-of which does not reveal what the thing to be notified of or about is.
Third, petitioner contends that the "substantial evidence" requirement itself demands that localities identify their reasons in their written denials. See Brief for Petitioner 23. Certainly, as discussed above, the phrase "substantial evidence" requires localities to give reasons, but it says nothing on its own about the document in which those reasons must be stated or presented to a reviewing court.
Finally, petitioner invokes the statutory requirement that any adversely affected person shall have their challenge heard by a court "on an expedited basis." § 332(c)(7)(B)(v). See Brief for Petitioner 14-15, 28. As long as the reasons are provided in a written record, however, and as long as they are provided in such a manner that is clear enough and prompt enough to enable judicial review, there is no reason to require that those reasons be provided in the written denial itself.
We acknowledge that petitioner, along with those Courts of Appeals that have required a locality's reasons to appear in its written denial itself, have offered plausible bases for a rule that would require as much. See, e.g.,Todd,244 F.3d, at 60("A written record can create difficulties in determining the rationale behind a board's decision ..."). Congress could adopt such a rule if it were so inclined, but it did not do so in this statute. It is not our place to legislate another approach.
IV
Thus, we hold that the Act requires localities to provide reasons when they deny cell phone tower siting applications, but that the Act does not require localities to provide those reasons in written denial letters or notices themselves. A locality may satisfy its statutory obligations if it states its reasons with sufficient clarity in some other written record issued essentially contemporaneously with the denial. In this case, the City provided its reasons in writing and did so in the acceptable form of detailed minutes of the City Council meeting. The City, however, did not provide its written reasons essentially contemporaneously with its written denial. Instead, the City issued those detailed minutes 26 days after the date of the written denial and just 4 days before petitioner's time to seek judicial review would have expired.[7]The City therefore did not *819 comply with its statutory obligations. We do not consider questions regarding the applicability of principles of harmless error or questions of remedy, and leave those for the Eleventh Circuit to address on remand.
For the foregoing reasons, we reverse the judgment below and remand the case for further proceedings consistent with this opinion.
It is so ordered.

Brief minutes had been adopted on April 19, but these only noted that the motion to deny the application had passed with five members in favor and one member recused. See Council Brief 041210, online at http:// roswell.legistar.com/LegislationDetail.aspx?ID=657578&GUID=08D5297C-0271-41 F9-9DAA-E8E3DD6314BD&Options=&Search= (all Internet Materials as visited January 12, 2015, and available in Clerk of Court's case file). According to the meeting calendar for the City Council's May 10, 2010, meeting, it was on that day that the City Council approved detailed minutes of the April 12 meeting that included a recitation of each member's statements during the hearing. See http://roswell.legistar.com/MeetingDetail.aspx? ID=101786&GUID=63828B21-EB83-4485-B4EA-10EE65CF48CD&Options=info&Search=.

The last "limitation" listed in the Act provides that localities shall act on applications to construct personal wireless service facilities "within a reasonable period of time after the request is duly filed ... taking into account the nature and scope of such request." § 332(c)(7)(B)(ii).

THE CHIEF JUSTICE's dissent rejects this particular requirement, and instead invents a process that turns judicial review on its head. Rather than give effect to a process that would permit an entity seeking to challenge a locality's decision to see the locality's written reasons before it files its suit-and the dissent agrees that the statute requires that a locality convey its reasons in writing, see post,at 5-the dissent would fashion a world in which a locality can wait until a lawsuit is commenced and a court orders it to state its reasons. The entity would thus be left to guess at what the locality's written reasons will be, write a complaint that contains those hypotheses, and risk being sandbagged by the written reasons that the locality subsequently provides in litigation after the challenging entity has shown its cards. The reviewing court would then need to ensure that those reasons are not post hocrationalizations, see Burlington Truck Lines, Inc. v. United States,371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962), but the dissent offers no guidance as to how a reviewing court that has never seen near-contemporaneous reasons would conduct that inquiry.

The City urges us to hold that the clock does not begin to run until after the reasons are given. We cannot so hold, however, without rewriting the statutory text. The Act provides that a lawsuit may be filed by "[a]ny person adversely affected by any final action or failure to act ... within 30 days after such action or failure to act." 47 U.S.C. § 332(c)(7)(B)(v). The relevant "final action" is the issuance of the written notice of denial, not the subsequent issuance of reasons explaining the denial. See Bennett v. Spear,520 U.S. 154, 177-178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)(agency action is "final" if it "mark[s] the consummation of the agency's decisionmaking process" and determines "rights or obligations" or triggers "legal consequences" (internal quotation marks omitted)).

One of petitioner's amiciargues that Congress has used the word "decision" in the context of other communications laws to mean something more than a judgment or verdict. See Brief for Chamber of Commerce of the United States of America (Chamber) et al. 9-13. But while it is true that a word used across "the same act" should be given the same meaning, see Taniguchi v. Kan Pacific Saipan, Ltd.,566 U.S. ----, ----, 132 S.Ct. 1997, 2004-2005, 182 L.Ed.2d 903 (2012), the Chamber's evidence is less persuasive because it arises out of entirely different "acts" and does not involve any term of art. By relying on other parts of Title 47 of the U.S. Code-some enacted in the Communications Act of 1934 decades before the enactment of the Telecommunications Act of 1996 at issue here-the Chamber stretches to invoke this canon of construction beyond its most forceful application. See A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 172-173 (2012).

For example, petitioner cites § 11 (FCC must "notify the parties concerned" when it makes a "determination and order" regarding a railroad or telegraph company's failure to maintain and operate a telegraph line for public use) and § 398(b)(5) ("Whenever the Secretary [of Commerce] makes a final determination ... that a recipient" of federal funds has engaged in impermissible discrimination, the Secretary shall "notify the recipient in writing of such determination ..."). Brief for Petitioner 24-25.

Though petitioner arranged for a transcript of the meeting to be recorded on its own initiative and at its own expense, see App. 109-275, the fact that petitioner took steps to reduce oral statements made at the City Council meeting to writing cannot be said to satisfy the obligation that Congress placed on the City to state clearly its reasons, and to do so in a writing it provides or makes available.* * *