# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-2512

_____

Smith Communications, LLC, an Arkansas limited liability company

*Plaintiff - Appellant*

v.

Washington County, Arkansas

*Defendant - Appellee*

v.

Gary Scott; Cathy Scott; Jerry Caudle; Kathy Caudle; Mike Anderson; Jessica Anderson

*Intervenor Plaintiffs - Appellees*

v.

Smith Communications, LLC, an Arkansas limited liability company

*Intervenor Defendant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: February 11, 2015
Filed: May 12, 2015

_____

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

The Quorum Court of Washington County, Arkansas ("Quorum Court") denied an application from Smith Communications, LLC ("Smith") to construct a cellular tower. The district court[1] upheld Washington County's denial of the application. We affirm.

I. *Background*

Smith installs and maintains wireless communications facilities, commonly referred to as "cellular towers" or "personal wireless facilities." In February 2013 Smith applied for a conditional use permit (CUP) to build an approximately 300-foot-tall cellular tower in Washington County. The county had zoned the property for the proposed tower site "Agriculture/Single-Family Residential." Homes are located within one-quarter of a mile from the tower's proposed site.

Section 11 of the Washington County Code (the "Zoning Code") governs applications for CUPs in Washington County. Section 11–200(a) of the Zoning Code provides that the Washington County Planning Board ("Planning Board") "shall hear and decide requests for a conditional use and may authorize such if it finds," in relevant part, the following:

> (4) That the proposed use is compatible with the surrounding area.
> (5) That the establishment, maintenance, or operation of the conditional use will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare.
> (6) That the conditional use will not be injurious to the use and enjoyment of other property in the surrounding area for the

---

[1]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

purposes already permitted, nor substantially diminish and impair property values within the surrounding area.

The Planning Board approved Smith's CUP application in early March 2013. In the coming weeks, however, local residents appealed the Planning Board's decision to the Quorum Court. The residents raised several arguments in their appeal, most of which related to the requirements of Zoning Code § 11–200(a). Specifically, the residents' arguments focused on "safety," "property values," the tower's "fit" with the surrounding area, the tower's proximity to their homes, and concerns of residents who had purchased their homes specifically because of the surrounding scenery and views—which the proposed tower would allegedly "destroy."

The Quorum Court first heard the appeals on June 4, 2013. Members of the public, members of the press, and attorneys for both sides attended the meeting. The meeting continued for three hours, and the participants exhaustively discussed the alleged benefits and problems associated with the proposed tower. The participants specifically discussed the requirements of Zoning Code § 11–200(a); cellular phone reception in the area; potential safety issues, particularly in the event of inclement weather or tornadoes; the tower's placement and proximity to nearby residences; the tower's fit with the surrounding area; and the tower's impact on nearby residents' views and property values.

The Quorum Court held a follow-up meeting on June 24, 2013. Critically for purposes of this appeal, minutes from the June 4, 2013 meeting were made available to Smith three days earlier, on June 21, 2013. Attendants of the June 24, 2013 meeting again included members of the public, members of the press, and attorneys for both sides. And, once again, the participants discussed the requirements of Zoning Code § 11–200(a), cellular phone reception in the area, potential safety issues, the tower's placement and fit with the surrounding area, and the tower's impact on nearby residents' views and property values. At the end of the meeting, members of the

Quorum Court voted 10 to 3 to reject Smith's CUP application. The members who voted against the application believed it failed to meet the requirements of Zoning Code § 11–200(a)(4), (5), and (6).

Four days later, on June 28, 2013, Washington County sent Smith an email containing a letter of denial for the CUP application. The letter states that "[t]his letter is your official notification that the [CUP] application . . . was denied by the Washington County Quorum Court on June 24, 2013." Washington County sent another email to Smith approximately one hour later, adding that "[t]he minutes and video of the first and last Quorum Court meetings will act as the County's written reason for denial." At the time, minutes from the June 4, 2013 meeting had already been available to Smith for a week; minutes from the June 24, 2013 meeting, however, were not available to Smith until July 22, 2013.

Smith filed suit against Washington County on July 24, 2013, asserting that Washington County failed to provide a legally adequate explanation of its reasons for the denial and that the denial was not based on substantial evidence in violation of the Telecommunications Act of 1996 ("Act"). *See* 47 U.S.C. § 332(c)(7)(B)(iii) and (v). On March 31, 2014, the district court issued an order in which it held that Washington County could not rely on the meeting minutes to constitute a legally adequate explanation for the denial under the Act. The court, therefore, remanded the matter to the Quorum Court and required Washington County to explain the reasons for its denial in a writing *separate* from the minutes and written record. Accordingly, on April 18, 2014, Washington County filed an additional explanation, again reciting the requirements of § 11–200(a)(4), (5), and (6) and stating that the denial was based on the tower's proximity to surrounding properties, its detrimental impact on neighboring residents' "exceptional view," and its "incompatib[ility] with the surrounding area."

The district court ultimately found that this new statement complied with the Act and, upon analyzing the reasons identified therein, concluded that substantial evidence supported Washington County's denial of Smith's CUP application.

## II. *Discussion*

Smith argues on appeal that the district court (1) denied Smith expedited review in violation of the Act and (2) erred in holding that Washington County did not violate the Act when it denied Smith's CUP application. "We review the district court's application of [the] law *de novo*, its denial of equitable relief for abuse of discretion, and its findings of fact for clear error." *Stutzka v. McCarville*, 420 F.3d 757, 761 (8th Cir. 2005) (citing *Lincoln Benefit Life Co. v. Edwards*, 243 F.3d 457, 461 (8th Cir. 2001) (per curiam)). We review Washington County's denial of the CUP application for "'substantial evidence contained in a written record.'" *Sprint Spectrum, L.P. v. Platte Cnty., Mo.*, 578 F.3d 727, 733 (8th Cir. 2009) (quoting 47 U.S.C. § 332(c)(7)(B)(iii)).

We note at the outset that Congress enacted the Act "to foster competition among telecommunications providers, to improve the quality of their services, and to encourage the rollout of new technologies without delay." *USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment of the City of Des Moines*, 465 F.3d 817, 820 (8th Cir. 2006) (citing *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 115 (2005)). "One of the means by which [Congress] sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Abrams*, 544 U.S. at 115.

Despite emphasizing the avoidance of unnecessary delays, Congress expressly preserved the authority of any "State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). This authority is subject to

certain limitations under the Act, including, as relevant to this appeal, that any denial of permission to construct a cellular tower must "be in writing and supported by substantial evidence contained in a written record." *Id.* § 332(c)(7)(B)(iii).

## A. *Expedited Review*

The Act provides that district courts "shall hear and decide" actions challenging a local government's denial of permission to construct a cellular tower "on an expedited basis." *Id.* § 332(c)(7)(B)(v). Smith argues largely that the district court failed to provide expedited review because the court should have simply "order[ed] the issuance of a permit" upon concluding that Washington County had failed to provide an adequate written explanation for its denial.

Smith's argument fails, however, because Washington County *did* provide a legally adequate explanation for its denial when it referred Smith to the meeting minutes. Indeed, as the Supreme Court recently held, "*a locality may rely on detailed meeting minutes*" to provide its written reasons for denial, "so long as the locality's reasons are stated clearly enough to enable judicial review." *T-Mobile S., LLC v. City of Roswell, Ga.*, 135 S. Ct. 808, 816 (2015) (emphasis added).[2] In this case, the meeting minutes are sufficiently clear to "enable judicial review." *Id.* The June 4, 2013 meeting minutes alone contain thirty pages of detailed notes from the participants' presentations and discussions about the tower. Washington County did not violate the Act by relying on these meeting minutes to provide the written reasons for its denial.

We do note, however, that at the time the Quorum Court denied Smith's application, only the minutes from the June 4, 2013 meeting had been made available. The minutes from the June 24, 2013 meeting were not made available until July 22,

---

[2]The Supreme Court issued the *Roswell* decision after the district court issued its decision in this case. Prior to *Roswell*, the case law was unclear as to whether a locality could rely on meeting minutes to constitute a written explanation for a denial under the Act.

2013. The Supreme Court has made clear that, as a general matter, a "locality must provide or make available its written reasons at essentially the same time as it communicates its denial." *Id.* Thus, because Washington County did not make the June 24, 2013 minutes available until 24 days after it notified Smith in writing of its denial, it failed to provide the minutes within the requisite time frame. *See id.* at 818 (holding that a city failed to "provide its written reasons essentially contemporaneously with its written denial" because it issued the minutes at issue "26 days after the date of the written denial").

Washington County's failure to make the June 24, 2013 meeting minutes available earlier, however, did not require the district court to grant Smith immediate relief by ordering the issuance of a CUP. Washington County's reference to the June 4, 2013 meeting minutes—which, again, were already available at the time of the written denial—informed Smith of the reasons for the Quorum Court's denial. The June 4, 2013 minutes reflect extensive discussion of the requirements of Zoning Code § 11–200(a), safety issues, the tower's proximity to nearby residences, the tower's detrimental impact on residents' views and property values, and the tower's fit with the surrounding area. Not surprisingly, these same concerns were again discussed during the June 24, 2013 meeting, which representatives of Smith also attended. The residents and Quorum Court reiterated the same concerns which underlay their appeal of the Planning Board's initial approval of Smith's CUP application months before the June 2013 Quorum Court meetings.

Put simply, in light of these facts and the record before us, Smith received adequate notice of the reasons for the Quorum Court's denial. Furthermore, assuming arguendo that Washington County's failure to promptly make the latter meeting minutes available somehow violated the Act, the violation was, at most, a harmless error. *See id.* at 818–19 (noting that a locality's failure to make meeting minutes available fewer than 26 days after the written denial may constitute "harmless error"); *see also id.* at 819 (Alito, J., concurring) ("I have trouble believing that [the party

seeking to build a cellular tower,] which actively participated in the decisionmaking process . . . was prejudiced by the . . . delay in providing a copy of the minutes.").[3]

### B. *Substantial Evidence*

Smith argues that Washington County violated the Act by denying the CUP application without substantial evidence supporting its decision. In that regard, Smith raises various arguments, including that the tower would comply with applicable laws and regulations, that the tower would not affect nearby property values, and that aesthetic objections to the tower are merely generic "NIMBY" (meaning, "not in my back yard") objections.

In reviewing the record for substantial evidence supporting the Quorum Court's decision, we note the deferential nature of this standard of review:

> [W]e cannot substitute our determination for that of the administrative fact-finder just because we believe that the fact-finder is clearly wrong. . . . If the [Quorum Court]'s findings are supported by some substantial level of evidence (but less than a preponderance) on the record as a whole . . . the [Quorum Court]'s decision must be affirmed. . . . We will not reject the [Quorum Court]'s decision as unsupported by substantial evidence because there exists the possibility of drawing two inconsistent conclusions from the evidence.

*USCOC of Greater Iowa*, 465 F.3d at 821–22 (quotations and citations omitted).

---

[3]Similarly, and in light of the same considerations, we hold that the district court's decision to order an additional explanation from Washington County independent from the meeting minutes was, at most, a harmless error.

To the extent that Smith argues the district court otherwise improperly delayed any proceeding or action, thereby denying Smith the requisite expedited review, we note that Smith neither sought a writ of mandamus nor appealed the remand to the Quorum Court at the time the district court issued its decision.

Upon thoroughly reviewing all of Smith's contentions and the record as a whole, we conclude that substantial evidence supports the Quorum Court's denial of Smith's application. As this court has already made clear, the Act's "'substantial evidence' requirement is 'directed at whether the local zoning authority's decision is *consistent with the applicable local zoning requirements*.'" *Sprint Spectrum*, 578 F.3d at 733 (emphasis added) (quoting *VoiceStream Minneapolis, Inc. v. St. Croix Cnty.*, 342 F.3d 818, 830 (7th Cir. 2003)). In this case, the Quorum Court analyzed the 300-foot tower's placement and proximity to nearby residences and reviewed evidence (including pictures and simulations) of the specific areas in question. It similarly evaluated arguments and evidence about, among other things, the tower's detrimental impact on neighboring residents' unique views and property values. After analyzing this and other relevant evidence, the Quorum Court found that the proposed tower was not compatible with the neighboring property, would interfere with the use and enjoyment of surrounding area, would significantly alter nearby residents' views, and would harm property values in part because, as one Quorum Court member stated after evaluating the evidence, he would not buy property in the area with the 300-foot tower so close. In light of these considerations, the Quorum Court denied Smith's application to construct the tower—as required under Zoning Code § 11–200(a).

This court in *Sprint Spectrum* addressed a similar scenario. It likewise held that substantial evidence supported the denial of an application to construct a 153-foot tower (which, notably, was half the size of the tower in this case). We specifically noted that "aesthetic concerns can be a valid basis on which to deny Sprint's permit, so long as the aesthetic judgment is grounded in the specifics of the case and not based on generalized aesthetic concerns . . . that are applicable to any tower, regardless of location." *Id.* (alteration in original) (quotation and citation omitted). In that regard, we noted that the county "concluded that the property—although zoned agricultural—was surrounded by residential neighborhoods," the tower would "visually dominate an otherwise residential area," and "[t]hree owners of nearby homes sent letters . . . in which they cited the residential character of the specific

location and the negative visual impact that a tower would have on it." *Id.* at 733–34 (quotations omitted).

In sum, "[k]eeping in mind that the substantial evidence standard is 'essentially deferential,' we conclude that the [Quorum Court] had before it substantial evidence on the record as a whole that the tower's scale, its proximity to residences, and the surrounding environment made approval inappropriate in view of the considerations outlined in" Zoning Code § 11–200(a). *Id.* at 734 (citation omitted).

### III. *Conclusion*

Accordingly, we affirm the decision of the district court.

_____