# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-2982

_____

Tom Dunne, Jr.

*Plaintiff - Appellant*

v.

Resource Converting, LLC; Tim Danley; Rick Kersey; Sebright Products, Inc.;
Gary Brinkmann; NewWay Global Energy; David Wolf; Jerry Flickinger; JWR, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

_____

No. 19-3170

_____

Resource Converting, LLC

*Plaintiff - Appellee*

v.

Tom Dunne, Jr.

*Defendant - Appellant*

_____

No. 19-3271
_____

Resource Converting, LLC

*Plaintiff - Appellant*

v.

Tom Dunne, Jr.

*Defendant - Appellee*
_____

Appeals from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 14, 2021
Filed: March 17, 2021
_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Tom Dunne, Jr. purchased licenses for Resource Converting, LLC's ("RCI") non-thermal, pulverizing, and drying system technology ("PAD System"). Dunne alleges the capabilities of the PAD System were misrepresented to him. Two lawsuits ensued in federal district court, one in Iowa and one in Missouri. In this consolidated

appeal, we affirm the Iowa judgment and reverse and remand the Missouri judgment for further proceedings consistent with this opinion.

## I. BACKGROUND

RCI; Tim Danley; Rick Kersey; Sebright Products, Inc.; Gary Brinkmann; NewWay Global Energy; David Wolf; Jerry Flickinger; and JWR, Inc. (collectively, "the RCI defendants") targeted Dunne to purchase licenses granting Dunne the exclusive right to sell the PAD System in the St. Louis, Missouri, area. The stated purpose of the PAD System was to convert municipal waste into "biomass and ultimately renewable fuels." On August 21, 2015, Dunne entered into five license agreements with RCI for the PAD System, agreeing to pay a total of $1,000,000. Dunne made an initial payment of $400,000 but refused to make the final payment when he was never able to see an operational PAD System.

Approximately ten months after entering into the license agreements, Dunne sent the RCI defendants a letter that sought a refund of the $400,000 and threatened to sue in federal court in Missouri if the refund was not promptly issued. Ten days later, RCI commenced an action against Dunne in the Polk County Iowa District Court, alleging breach of the license agreements and seeking payment of the remaining $600,000. Dunne then simultaneously removed the Iowa state action to the United States District Court for the Southern District of Iowa ("Iowa action") and sued the RCI defendants in the United States District Court for the Eastern District of Missouri ("Missouri action"). Both sides made unsuccessful motions to transfer and consolidate the cases, so the two cases proceeded on parallel paths.

The Iowa action went to trial in May 2018. Dunne defended against the RCI contract claim on a theory of fraudulent misrepresentation and counterclaimed for the return of his initial payment. After an eight-day trial, the jury returned a verdict, finding both that Dunne breached the license agreements and that RCI fraudulently

misrepresented the PAD System. The jury awarded no compensatory damages to RCI or Dunne but awarded Dunne $200,000 in punitive damages. Post-trial motions were brought by both parties, and the district court[1] entered an order that upheld the jury's verdict; dismissed Dunne's counterclaims for equitable relief; and awarded Dunne attorney's fees and costs. Both parties appeal the judgment in the Iowa action.

After the Iowa trial, the Missouri district court dismissed Dunne's claims for fraudulent misrepresentation, fraudulent inducement, negligent misrepresentation, unjust enrichment, and civil conspiracy under Fed. R. Civ. P. 12(b)(6) and awarded the RCI defendants costs. Dunne appeals the judgment in the Missouri action.

## II.    DISCUSSION

### A.    Iowa Action

Dunne asserts the district court erred in three ways: (1) when it failed to increase the compensatory damages award; (2) when it dismissed his equitable counterclaims; and (3) when it failed to award his full claim for attorney's fees and costs. RCI also asserts three district court errors: (1) when it failed to strike the punitive damages award; (2) when it failed to enter a judgment as a matter of law in favor of RCI on the fraudulent misrepresentation counterclaim; and (3) when it concluded Dunne was a prevailing party and awarded fees and costs. Having carefully reviewed the record and each issue raised by the parties, we find neither error nor an abuse of discretion.

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

## 1. Damages

Dunne contends the amount of compensatory damages was uncontested and, therefore, the district court erred when it denied his motion under Fed. R. Civ. P. 59 for $400,000 in compensatory damages. We review "the denial of an additur for abuse of discretion, bearing in mind that if the amount of damages was disputed, a grant of additur violates the losing party's Seventh Amendment right to a jury trial." Am. Bank of St. Paul v. TD Bank, N.A., 713 F.3d 455, 468 (8th Cir. 2013) (citations omitted).

While it is undisputed that Dunne made an initial $400,000 payment for the licenses, the parties contested the existence of any damages. Dunne claimed he suffered a loss of $400,000 as a result of RCI's misrepresentation and RCI countered that Dunne received some value from the licenses. The question of damages was properly left to the jury, and the record makes plain that the jury carefully deliberated on this issue.

The jury was asked to decide what amount would reimburse Dunne and put him in as good a position as if the misrepresentations were not made. The court instructed the jury that it "may" consider the $400,000 payment when considering compensatory damages. When, during deliberations, the jury sent the court a question expressly asking whether it could award no compensatory damages, the court responded: "The determination of damages is your decision to make. You decide how much harm was caused by either a breach of contract or a fraudulent misrepresentation." Dunne did not object to the court's response.

It is apparent that when resolving the question of compensatory damages, the jury arrived at the conclusion that no award was proper. Under these circumstances, a grant of *additur* would violate the losing party's Seventh Amendment right to a jury trial. The district court did not abuse its discretion in denying Dunne's request for

*additur*. See Trinity Prods., Inc. v. Burgess Steel, L.L.C., 486 F.3d 325, 335 (8th Cir. 2007) (finding no abuse of discretion in denying a motion for *additur* when the jury "obviously" found the actual damages were less than the market value).

Without an award of compensatory damages, RCI contends that the jury's award of punitive damages must be stricken and that if punitive damages are available, the award is unconstitutionally excessive. Interpretations of state law and the constitutionality of a punitive damages award are reviewed by us *de novo*. See Cooper Indus., Inc. v. Leatherman Tool Gr., Inc., 532 U.S. 424, 436 (2001); Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005). Under Iowa law, "an award of punitive damages does not depend on an award of compensatory damages, but rather depends on a showing of actual damages." Podraza v. City of Carter Lake, 524 N.W.2d 198, 203 (Iowa 1994); see also Pringle Tax Serv., Inc. v. Knoblauch, 282 N.W.2d 151, 154 (Iowa 1979) ("[A] failure to award actual damages will not bar [punitive] damages when actual damage has in fact been shown."). As noted by RCI, more recently, the Iowa Supreme Court made a statement in a footnote indicating a punitive damages award may only be recoverable if the plaintiff proves compensatory damages. Spreitzer v. Hawkeye State Bank, 779 N.W.2d 726, 746 n.10 (Iowa 2009). Contrary to RCI's interpretation, we do not read this statement as a declaration of a new rule of Iowa law. The opinion, citing Pringle, instead supports that actual damages need only be established in order for punitive damages to be recoverable. Establishment of damages is a different concept than an award of damages, and upholding the jury's verdict on punitive damages in this case would not run afoul of Iowa law.

A close reading of the jury instructions and verdict demonstrate that the jury found Dunne suffered actual damages, even though it did not award compensatory damages. In particular, the jury found fraudulent misrepresentation, which required a finding that RCI's false representations were "a cause of [Dunne's] damage[s]." Further, the jury was instructed that it could only award punitive damages if it found

that RCI "caused actual damage to [Dunne]." We presume the jury followed the instructions. See Borchardt v. State Farm Fire & Cas. Co., 931 F.3d 781, 786 (8th Cir. 2019). Because the jury necessarily found that Dunne suffered actual damages when it found fraudulent misrepresentation, punitive damages were recoverable under Iowa law. See Pringle, 282 N.W.2d at 154 (upholding award of punitive damages even though compensatory damages were not computed or awarded). For the same reasons, we also reject RCI's argument that it is entitled to judgment as a matter of law because the jury awarded no compensatory damages.[2]

We next turn to RCI's claim that the punitive damages award is unconstitutionally excessive under the Due Process Clause.[3] Punitive damages are grossly excessive if they shock the conscience or demonstrate passion or prejudice by the jury. See Trickey v. Kaman Indus. Techs. Corp., 705 F.3d 788, 802 (8th Cir. 2013). When considering the excessiveness of the award, we consider certain "guideposts," including (1) the reprehensibility of the conduct; (2) the disparity between the actual or potential harm and the punitive damages award; and (3) the difference between the civil penalties authorized in comparable cases and the punitive damages award. See BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574–75 (1996). After careful review, we are convinced that the award of punitive damages in this case is not unconstitutionally excessive.

Reprehensibility, "the most important guidepost," May v. Nationstar Mortg., LLC, 852 F.3d 806, 816 (8th Cir. 2017), is demonstrated in this record. RCI made

---

[2]While serious questions exist as to whether or not this issue was preserved as it was not expressly raised in RCI's Rule 50(b) motion, we need not consider the preservation issue as the record makes plain that the jury necessarily found that Dunne suffered actual damages.

[3]We apply the same analysis for federal and Iowa due process principles. See Eden Elec., Ltd. v. Amana Co., 370 F.3d 824, 827–28 (8th Cir. 2004) (citing Wilson v. IBP, Inc., 558 N.W.2d 132, 147 (Iowa 1996)).

multiple misrepresentations and acted in a manner calculated to trick or deceive Dunne. See Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC, 758 F.3d 1051, 1061 (8th Cir. 2014) (noting two of the factors for reprehensibility include repeated conduct and trickery). The district court described RCI's conduct as "blatantly" lying to Dunne about the commercial success of the PAD system and the number of units operating commercially when, in fact, the PAD system had little to no commercial success. It found that RCI "employed the offensive strategy of forcing Dunne to make a quick decision with a false assertion that there was another buyer waiting in the wings ready to purchase the licenses if Dunne did not act quickly." RCI's multiple misrepresentations and trickery induced Dunne to enter into the license agreements to his detriment and are sufficiently reprehensible to warrant punitive damages.

While RCI focuses on the second guidepost and asserts the award must be vacated because no ratio can be calculated between $0 and $200,000, RCI misreads our precedent. We are to consider both actual harm and potential harm. See Asa-Brandt, Inc. v. ADM Investor Servs., Inc., 344 F.3d 738, 747 (8th Cir. 2003). The potential harm that Dunne faced as a result of RCI's misrepresentations was the entire $1,000,000 licence fee. A $200,000 award of punitive damages in a case with potential harm of $1,000,000 is not disproportionate. Our precedent shows that we have upheld similar punitive damages awards when only nominal damages were awarded. See, e.g., Bryant v. Jeffrey Sand Co., 919 F.3d 520, 527–29 (8th Cir. 2019) (upholding $250,000 in punitive damages when only nominal damages were awarded). The award of punitive damages here is not unconstitutionally excessive.

RCI's reliance on a $10,000 criminal penalty under Iowa law for fraud is misplaced. The Supreme Court has recognized that criminal penalties are more closely tied to "the seriousness with which a state views the wrongful action" and are less helpful "[w]hen used to determine the dollar amount of the award." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 428 (2003). The failure of either

party to identify comparable civil penalties does not render the award unconstitutionally excessive, especially when the criminal penalty is for general fraud and unrelated to the amount of loss arising from that fraud. For all of these reasons, we affirm the district court's decision on damages.

### 2. *Equitable Relief*

Dunne alternatively argues that if his *additur* request is denied, he is entitled to an award of $400,000 under his equitable counterclaims. The district court concluded that because Dunne had an adequate remedy at law, it would not exercise its equitable jurisdiction. We review the district court's application of law *de novo* and its denial of equitable relief for abuse of discretion. See Smith Commc'ns, LLC v. Wash. Cnty., 785 F.3d 1253, 1257 (8th Cir. 2015). "A district court abuses its discretion if it bases its judgment on clearly erroneous factual findings or erroneous legal conclusions." Lonesome Dove Petroleum, Inc. v. Holt, 889 F.3d 510, 516 (8th Cir. 2018) (citations omitted). Applying these standards, we conclude Dunne is not entitled to equitable relief.

Under Iowa law, the presence of an adequate remedy at law generally limits the exercise of equity jurisdiction. Palmer v. Unisys Corp., 637 N.W.2d 142, 154 n.2 (Iowa 2001). In other words, "[e]quity generally will not provide relief where an adequate remedy at law existed and defendant was denied that relief for appropriate legal reasons." CMI Roadbuilding, Inc. v. Iowa Parts, Inc., 920 F.3d 560, 566 (8th Cir. 2019) (quoting Mosebach v. Blythe, 282 N.W.2d 755, 761 (Iowa Ct. App. 1979)). Dunne prevailed on his fraudulent misrepresentation claim at law. While he is unhappy with the decision the jury made on the issue of compensatory damages, the jury's disagreement with his view of damages does not render the remedy at law inadequate. The remedy Dunne sought was at all times available for the jury to award, the jury simply rejected his proof of damages. Finding neither an

error of law nor an abuse of discretion, we affirm the district court's disposition on Dunne's equitable counterclaims.

### 3. *Attorney's Fees and Costs*

Finally, we turn to attorney's fees and costs. Dunne requested $922,816.50 in fees for the Iowa action; $672,467.00 in fees for the Missouri action; and $160,912.30 in costs. Dunne's request was made pursuant to statutory and contractual authorizations, or, alternatively, in equity and as a matter of Iowa common law. The district court declined to award any fees incurred in the Missouri action because Dunne failed to establish his attorneys' work in Missouri was actually used in Iowa. It reduced the award of Iowa fees by half, reasoning (1) the case did not present difficult or important issues; (2) the amount involved and recovered did not warrant the request; and (3) the case was over-litigated. The court also reduced the requested amount of costs by half.

The Supreme Court has noted that "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Contrary to RCI's assertion, Dunne is a prevailing party. See, e.g., Matter of Herrera, 912 N.W.2d 454, 472 (Iowa 2018) (a defendant is a prevailing party if he fulfills his "primary objective" of rebuffing the plaintiff's claim). Iowa law governs Dunne's fee request, see Ferrell v. W. Bend Mut. Ins. Co., 393 F.3d 786, 796 (8th Cir. 2005), and permits the recovery of fees in this case under the terms of the license agreements, see NevadaCare, Inc. v. Dep't of Human Servs., 783 N.W.2d 459, 469–70 (Iowa 2010). We review an award of attorney's fees for abuse of discretion. Weitz Co. v. MH Wash., 631 F.3d 510, 528 (8th Cir. 2011).

We find the method used and reasons given by the district court for the reductions were well within its discretion. See Lee v. State, 906 N.W.2d 186, 199 (Iowa 2018) (finding the percentage method was not an abuse of discretion under

-10-

Iowa law); cf. Banks v. Slay, 875 F.3d 876, 882 (8th Cir. 2017) (approving district court's use of a percentage reduction to a fee request under 42 U.S.C. § 1988 after considering the complexity of the case). Here, the district court thoroughly analyzed the request and found the hourly rate was reasonable but Dunne's attorneys expended an unreasonable number of hours. It then applied a percentage reduction rather than a line-by-line reduction. The method applied was consistent with Iowa law and the finding that the number of hours were excessive is amply supported in the record.

In addition, Dunne failed to present evidence that any of his attorneys' work done in preparation for the Missouri action was actually used in the Iowa litigation. The district court's refusal to assume the work was used in the Iowa litigation was appropriate, particularly when the Missouri action involved several additional defendants and additional claims. The district court did not abuse its discretion by reducing the attorney's fees request. We affirm the award of $461,408.25 for attorney's fees.

On the other hand, federal law governs an award of costs. See Stender v. Archstone-Smith Operating Tr., 958 F.3d 938, 947 (10th Cir. 2020) (explaining in detail why Fed. R. Civ. P. 54(d) governs in diversity cases); see also 10 Charles Alan Wright et al., Federal Practice & Procedure § 2669 (3d ed. 1998). Dunne sought costs taxable under 28 U.S.C. § 1920 and Rule 54(d). He also sought other non-taxable costs and costs incurred in the Missouri action under the terms of the license agreements and Iowa law. See Weitz Co. v. MH Wash., 631 F.3d 510, 536 (8th Cir. 2011) (noting a contractual provision requiring the losing party to pay costs "overrid[es] the strictures of § 1920").

A district court has "substantial discretion" when determining an award of costs to a prevailing party under § 1920 and Rule 54(d). See Richmond v. Southwire Co., 980 F.2d 518, 520 (8th Cir. 1992) (per curiam); see also Little Rock Cardiology Clinic PA v. Baptist Health, 591 F.3d 591, 601 (8th Cir. 2009) (noting the district

court's "broad discretion" over an award of costs). "[N]ot all expenses of litigation are costs taxable against the losing party, and within the statutory framework of costs eligible to be taxed, the district court has discretion in determining and awarding costs in a given case." Pershern v. Fiatallis N. Am., Inc., 834 F.2d 136, 140 (8th Cir. 1987). Within that discretionary authority, the district court may, for example, reduce or deny a request for costs "because the prevailing party obtained only a nominal victory, or because the taxable costs of the litigation were disproportionate to the result achieved." Richmond, 980 F.2d at 520. Arguably, Dunne's request for costs suffered from both defects. But, more importantly, a district court abuses its discretion when determining an award of costs only if its conclusion is based on "clearly erroneous factual findings or erroneous legal conclusions." Little Rock Cardiology Clinic PA, 591 F.3d at 601 (quoting Lankford v. Sherman, 451 F.3d 496, 503–04 (8th Cir. 2006)). Neither are present in this case.

Dunne obtained a $200,000 punitive damages award and then sought to recover $160,912.30 in costs. When considering the disproportionality between the fees/costs sought and the amount at issue, the court observed the "overkill" involved in defending against RCI's breach of contract claim, which was in "stark contrast" to "Dunne's disturbing lack of due diligence in investigating whether or not to purchase the licenses in the first place." The district court had also noted in an earlier order the difficulty in "generat[ing] sympathy for Dunne as his lack of due diligence clearly showed that he is not the sophisticated business person that he claims to be." These findings are supported by evidence in the record and are not clearly erroneous.

The district court, in its discretion, reduced Dunne's request for costs by one-half because the case was over-litigated and the request for costs was simply not reasonable when compared to the amount at issue. The district court's finding that the case was over-litigated is supported by the evidence in the record and is not clearly erroneous. Likewise, the district court's finding that the request for costs was disproportionate to the amount in controversy is not clearly erroneous. Based on

these findings and our review of the record, we conclude the district court did not abuse its broad discretion by reducing Dunne's request for costs by one-half. The district court's award of costs in the amount of $80,456.15 is affirmed.

## B.    Missouri Action

Dunne sued the RCI defendants in Missouri for the same controversy over the PAD System. After the Iowa jury verdict, Dunne filed a Second Amended Complaint in the Missouri action, asserting claims for (1) fraudulent misrepresentation, (2) fraudulent inducement, (3) negligent misrepresentation, (4) unjust enrichment, and (5) civil conspiracy. The district court dismissed the complaint pursuant to Fed. R. Civ. P. 12(b)(6), concluding Dunne's claims were barred by both claim preclusion and the economic loss doctrine. The district court also awarded the RCI defendants their costs. Dunne appeals, arguing the district court erred when it (1) applied federal law instead of state law in its claim preclusion analysis; (2) applied the economic loss doctrine to his misrepresentation claims; and (3) awarded costs without an opportunity to respond.

### 1.    Claim Preclusion

Dunne asserts the district court mistakenly applied federal law rather than Iowa law when it concluded that claim preclusion barred some of Dunne's claims against certain defendants. We review the district court's choice-of-law determination and application of claim preclusion *de novo*. See St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp., 457 F.3d 766, 770 (8th Cir. 2006); Stricker v. Union Planters Bank, N.A., 436 F.3d 875, 877–78 (8th Cir. 2006).

It is well established that "[t]he law of the forum that rendered the first judgment controls the" claim preclusion analysis. C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 764 (8th Cir. 2012) (quoting Laase v. Cnty. of Isanti, 638

-13-

F.3d 853, 856 (8th Cir. 2011)). When a federal court sitting in diversity renders the first judgment, we apply the law of the forum state of that court. See id. Thus, Iowa's claim preclusion rules govern here, and the district court erred when it applied federal law rather than Iowa law. The parties dispute the effect that Iowa's claim preclusion rules will have on Dunne's claims. We do not resolve these disputes that involve legal and factual questions but rather leave them to the district court in the first instance. See United Fire & Cas. Co. v. Titan Contractors Serv., Inc., 751 F.3d 880, 887 (8th Cir. 2014) (remanding for the district court to consider in the first instance an issue not decided by the district court that raised complex factual and legal issues).

### 2. *Economic Loss Doctrine*

Dunne also contends the district court erred in applying the economic loss doctrine under Missouri law to his claims for fraudulent and negligent misrepresentation. Our role "is to interpret [Missouri] law, not to fashion it." Dannix Painting, LLC v. Sherwin-Williams Co., 732 F.3d 902, 905 (8th Cir. 2013) (citations omitted). The parties agree that the Missouri Supreme Court has yet to decide whether the doctrine would apply to Dunne's misrepresentation claims, so "we must predict how the court would rule." Id. (citations omitted).

Dunne argues Missouri law would not apply the doctrine to his claims, in part, because the license agreements are not governed by the Uniform Commercial Code ("UCC"). Under Missouri law, "[t]he economic loss doctrine prohibits a commercial buyer of goods 'from seeking to recover in tort for economic losses that are contractual in nature.'" Id. at 905–06 (quoting Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184, 192 (Mo. Ct. App. 2010)). As we explained in Dannix Painting, the economic loss doctrine "was judicially created to protect the integrity of the [UCC] bargaining process" by "prevent[ing] tort law from altering the allocation of costs and risks negotiated by the parties." 732 F.3d at 906 (citations

-14-

omitted). Recently, in <u>Vogt v. State Farm Life Insurance Co.</u>, this Court declined to apply the doctrine under Missouri law to a conversion claim, noting that Missouri law has limited "this doctrine to warranty and negligence or strict liability claims." 963 F.3d 753, 774 (8th Cir. 2020) (collecting Missouri cases applying the doctrine to UCC claims). In <u>Vogt</u>, we found it proper to limit the doctrine to its "traditional moorings." <u>Id.</u> That rationale applies with equal force here, and, while there may be some circumstance where the Missouri Supreme Court would apply the doctrine outside the UCC, this is not the case. We find the courts which have found the doctrine does not apply in circumstances like these persuasive. <u>See, e.g.</u>, <u>Steadfast Ins. Co. v. ARC Steel, LLC</u>, Case No. 16-3214-CV-S-SRB, 2019 WL 2090696, at *3 (W.D. Mo. May 13, 2019) (collecting cases declining to apply the doctrine to cases outside the UCC). We will not expand the economic loss doctrine beyond the contexts in which it has been applied by Missouri courts. We reverse the district court's application of the doctrine to bar Dunne's misrepresentation claims.[4]

### 3. Remaining Claims and Costs

After the district court's rulings on claim preclusion and the economic loss doctrine, only the conspiracy claims remained. The district court dismissed these claims because conspiracy is not an independent cause of action but rather requires an underlying claim. <u>See, e.g.</u>, <u>Envirotech, Inc. v. Thomas</u>, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008). As we have revived the underlying claims, the reasoning for dismissing the conspiracy claims no longer applies. We offer no opinion on resolution of the conspiracy claims except to note they too are revived by our decision. With Dunne's claims being subject to further proceedings in the district court, the RCI defendants are no longer a prevailing party. We vacate the district court's award of costs in favor of the RCI defendants.

---

[4]Likewise, we predict that the Missouri Supreme Court would not apply the economic loss doctrine to bar Dunne's other tort claims.

## III. CONCLUSION

For the foregoing reasons, we affirm the Iowa judgment in its entirety.  We reverse the Missouri judgment, vacate the costs award, and remand for further proceedings consistent with this opinion.

_____